RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

    *v.*

No. 04-6521

HAL M. ATCHLEY,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 03-00168—R. Allan Edgar, District Judge.

Argued: December 1, 2006

Decided and Filed: January 23, 2007

Before: MARTIN, NORRIS, and GIBBONS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jeffery S. Frensley, RAY & FRENSLEY, Nashville, Tennessee, for Appellant. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Jeffery S. Frensley, RAY & FRENSLEY, Nashville, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

---

**OPINION**

---

    BOYCE F. MARTIN, JR., Circuit Judge. Defendant Hal M. Atchley was charged with two counts pertaining to the manufacture of methamphetamine, one count of possessing a firearm in furtherance of a drug trafficking crime, and two counts of being a felon in possession of a firearm. The case proceeded to trial and Atchley was convicted on all counts. On appeal, he argues that the evidence of methamphetamine manufacturing and firearms found in his motel room should have been suppressed, that the drug-related counts should have been tried separately from the firearm-related counts, and that the second superseding indictment issued by the government violated his due process rights. Atchley also argues that the district court erred in admitting and instructing the jury on evidence of flight, warranting a new trial. For the reasons below, we **AFFIRM** his convictions.

1

I

On the afternoon of May 20, 2001, an unidentified person approached Sergeant Charles Brown of the Chattanooga police department and informed him that three or four people were manufacturing methamphetamine in room 139 of the Suburban Lodge, a nearby extended stay motel. The informant also provided a description of the suspects' vehicle. Brown sent four officers to investigate.

When the officers arrived at the motel, they observed two women and two men standing near a Chevrolet pickup truck matching the informant's description. The truck was parked about twenty feet from room 139. One of the officers, Officer Cobb, asked Atchley for identification. Atchley handed over his driver's license. When asked who had rented the room, Atchley responded that he had not, and that he and the others were merely trying to repair the truck. Meanwhile, another officer, Officer Engle, took Atchley's license to the motel's office, whereupon he was informed that Atchley was in fact registered to room 139. When confronted with the fact he lied, Atchley became nervous and non-responsive. Officer Cobb then decided to handcuff Atchley, though Cobb later testified that at the time, he did not consider Atchley to be under arrest, nor did he inform Atchley that he was under arrest. Rather, Cobb intended this as a safety precaution while Atchley was detained for further investigation.

When Atchley's left hand was cuffed, Atchley threw an elbow at Cobb and swung at him with his right hand. Using his free hand, Atchley attempted to grab the handgun of another officer at the scene, Officer Poteet. During this scuffle, one of the female suspects jumped on Officer Poteet's back, and the other female, who turned out to be Atchley's wife, escaped.[1] Officers used pepper spray to subdue Atchley and then placed handcuffs on both of his hands. At this point, due to his violent outburst, Atchley was placed under arrest.

Officers proceeded to conduct a protective sweep of room 139 in order to determine whether others remained inside. According to the officers, they looked through the open door of room 139 and observed in plain view a loaded handgun lying on the bed. Officer Engle stated that he smelled a chemical which he associated with methamphetamine manufacturing. When the officers entered, they observed in plain view two large glass jars appearing to contain a solvent, a large bottle of gas line anti-freeze, rubbing alcohol, and a police radio scanner.

The officers testified that based upon their observations, they were concerned that others in the motel were in danger due to the possibility of explosive gases and vapors that are often associated with methamphetamine manufacturing. Based on this alleged exigency, they briefly searched the room in order to determine the extent of the methamphetamine lab and whether it posed an imminent danger to others. The officers opened and looked inside the refrigerator, an ice chest, and what appeared to be an ammunition can. They discovered a glass beaker, rubber tubing, rock salt, and iodine crystals. They also found another loaded handgun inside a drawer.

After completing this search, the officers left the room and called Detective Randy Dunn. By the time Dunn arrived, Atchley was handcuffed and placed inside a police car. According to the district court's findings, Dunn took Atchley out of the car and asked for consent to search the motel room. Atchley was advised of his *Miranda* rights and gave Dunn written consent to search the room. Inside the room, Dunn found and seized items indicative of a methamphetamine laboratory, including chemicals that were in the process of being mixed.

---

[1]At the suppression hearing, Officer Cobb testified that the other male also ran off but was subsequently apprehended.

On July 22, 2003, Atchley was charged in a two-count indictment with attempting to manufacture methamphetamine (Count I), and possessing equipment, chemicals, products, and materials which may be used to manufacture methamphetamine (Count II). On October 28, 2003, a superseding indictment was issued, charging Atchley with three additional counts: one violation of 18 U.S.C. § 924(c) for possessing two firearms — a Ruger P89 9mm handgun and a Smith & Wesson Sigma .40 caliber handgun — in furtherance of a drug trafficking crime, and two violations of 18 U.S.C. § 922(g) for being a felon in possession of each firearm. On August 10, 2004, a second superseding indictment was issued. This indictment charged Atchley with the same five counts, but in addition, contained specific factual allegations relating to sentencing in an attempt to respond to the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004). After conviction by a jury trial, the district court sentenced Atchley to 320 months imprisonment followed by a term of six years supervised release.

II

The district court denied Atchley's motion to suppress, ruling that the officers had reasonable suspicion that criminal activity was afoot based upon the informant's tip, and that this suspicion was increased when Atchley lied to the officers. The court also rejected Atchley's argument that the police violated his Fourth Amendment rights by placing him under formal arrest without probable cause when they initially handcuffed him. It determined that Cobb did not tell Atchley he was under arrest when he handcuffed him, and that there was no Fourth Amendment violation because Atchley was merely being detained as a safety precaution while police conducted an investigation. The court further determined that once Atchley turned violent, what had initially been a brief investigative stop transformed into a *de facto* arrest.

The district court also held that the officers were justified in conducting the protective sweep, noting that the door to room 139 was already open, and police were able to simply look through the door and observe a handgun lying on the bed in plain view. The court explained that based on this gun and the suspects' violent behavior, the officers acted reasonably in conducting a protective sweep in order to ascertain that there were no other persons or weapons that could harm them. Once the officers were legitimately inside the hotel room to conduct the protective sweep, they had the right to seize the handgun and other incriminating evidence that was in plain view. With respect to the handgun itself, the court found that even though it was not obvious contraband (because such handguns are not *per se* illegal), the officers had the right to seize it based upon their reasonable belief that it posed a threat to officer safety.

The district court found that although Cobb and Engle's search of the refrigerator, ice chest, ammunition can, and drawer was not justified as part of the protective sweep, it was nonetheless lawful because the items that were in plain view gave the officers probable cause to suspect that the motel room served as a methamphetamine laboratory. Because such a laboratory posed a safety threat to others in the vicinity, the district court held there were exigent circumstances justifying a warrantless search.

The government offered an alternative ground for denying the suppression motion by contending that even if exigency did not justify the search, evidence seized from the motel room was inevitably discoverable via an independent source, namely, Atchley's written consent. However, Atchley argued that he only signed the form giving consent to search because he was in physical pain and was told he could receive medical treatment and water if he consented. The district court noted that Atchley presented little probative evidence to support his allegation of coercion, and additionally, that Dunn was a credible witness. The court determined that based on the totality of circumstances, Atchley's consent was "unequivocal, specific, intelligent[]" and "uncontaminated by duress or coercion." D. Ct. Op., Dec. 1, 2003, at 20. However, the district court ultimately ruled that, despite finding that Atchley's consent was voluntary, there was no need to address the

government's alternative argument because there was exigency to justify Cobb and Engle's prior search.

Atchley also moved to sever Counts I and II, which pertained to the manufacturing of methamphetamine, from the remaining three counts, which pertained to the firearms. He argued that joinder of the counts was prejudicial under Fed. R. Crim. P. 14(a), which allows a district court, at its discretion, to require separate trials for counts if it finds that joinder will prejudice a defendant. The district court denied this motion. *United States v. Atchley*, No. 1:03-cr-168, 2004 U.S. Dist. LEXIS 25541 (E.D. Tenn. Sept. 8, 2004). It first stated that joinder was appropriate under Fed. R. Crim. P. 8(a), which allows joinder of separate counts in the same indictment if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The court then analyzed Atchley's claim under Rule 14(a) and found that consolidation of the counts would not cause undue prejudice that would outweigh the public interest in judicial economy. *Id*. at *4. The court noted that in Atchley's case, it would not be difficult for a jury to distinguish between the evidence pertaining to each count. Further, the court explained that it would provide the jury with limiting instructions. *Id*. With respect to the particular counts, the district court explained that because Atchley would have to be found guilty of Counts I and II in order to be found guilty of Count III (use of a firearm in furtherance of a drug trafficking offense), Count III was "inextricably intertwined" with Counts I and II. *Id*. at *6. With respect to Counts IV and V, the district court noted that it was common practice for courts to try drug-related offenses at the same trial as offenses involving possession of firearms under section 922(g). *Id*. at *6-7.

After being convicted by a jury, Atchley moved for a new trial, alleging, *inter alia*, that the district court erroneously allowed testimony concerning evidence of flight.[2] The district court ruled that it was not error to allow the jury to consider this evidence under the proper instructions, which it had given.

III

When reviewing a denial of a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). Evidence is construed in the light most favorable to the government. *Id*. With respect to the reasonable suspicion required for *Terry* stops, we have noted that "the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination," and therefore, "'due weight' should be given to inferences drawn from facts by 'resident judges.'" *Id*. (citations omitted).

### A. The Officers Had Reasonable Suspicion of Criminal Activity

Atchley contends that the anonymous tip received by police was insufficient to cause officers to suspect that Atchley and his companions were involved in illegal conduct. Specifically, he argues that "[g]iven the absolute dearth of information the actions of these officers was [sic] more akin to the search for the Bermuda Triangle than constitutionally authorized police activity." Appellant's Br. at 13.

---

[2] After Atchley was charged in state court for crimes relating to the motel incident, but prior to being charged in federal court, he jumped bond. While on the lam, he was charged in Alabama with murdering a bail bondsman. A federal warrant was issued and Atchley was found in rural Missouri. Atchley objected to admission of this evidence at a pretrial conference, but the district court did not rule on it, deciding instead to wait until its presentment at trial. At trial, Atchley did not object to the admission of this evidence or the jury instruction on this evidence.

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Supreme Court held that in the interest of safety, a police officer may stop a person even in the absence of probable cause. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* Although *Terry* focused on officer safety and preventing future crimes, the Supreme Court has since expanded the scope of permissible stops to when an "officer has reasonable, articulable suspicion that [a] person *has been*, is, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)) (emphasis in original). The *Hensley* Court noted that this broad rule adequately balances an individual's interest in personal security with the government's interest in preventing ongoing or future criminal activity, solving past crimes, and bringing offenders to justice. *Id.* at 228-29.

When police receive a tip regarding criminal activity, in order to establish the level of suspicion necessary to justify a *Terry* stop, the tip must have sufficient indicia of reliability, *i.e.*, the tip must provide predictive information and a way to test the informant's knowledge or credibility. *Florida v. J.L.*, 529 U.S. 266, 270-72 (2000) (holding that an anonymous caller's tip that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun was insufficient to justify an officer's stop and frisk of a man matching that description). In *Alabama v. White*, 496 U.S. 325, 329 (1990), the Supreme Court upheld a police stop based on an anonymous tip where the tip accurately predicted the suspect's movements, in that the tip predicted that a woman carrying cocaine would leave an apartment building at a particular time, get into the type of car described by the tip, and drive to a specific named hotel. The Court found that the tip alone was insufficient to justify the stop, but once police observed the woman act as the tip predicted, their suspicion was reasonable. *Id.* Notably, the *J.L.* Court characterized the *White* case as "borderline," *J.L.*, 529 U.S. at 271, thus implying that any tip that did not rise to the level of tip in *White* would be insufficient to justify a *Terry* stop.

In this case, when police arrived at the motel, they observed four individuals standing around the type of vehicle the tip described, near room 139. According to the officers, the door to room 139 was open. When officers initially approached Atchley and his companions, their degree of suspicion was arguably beneath the "borderline" set in *White* because the tip was not corroborated by any predictive information upon which the officers could form reasonable suspicion. *See White*, 496 U.S. at 331-32. However, nothing in the Fourth Amendment prevented the officers from asking for identification or questioning the individuals. *See Florida v. Bostick*, 501 U.S. 429, 435 (1991) ("[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, [and] ask to examine that individual's identification, . . . as long as the police do not convey a message that compliance with their requests is required.") (internal citations omitted).

After Atchley volunteered his identification, officers discovered that he had lied when he said he was not renting the room, which raised the level of suspicion. *See Weaver v. Shadoan*, 340 F.3d 398, 408 (6th Cir. 2003) (noting that lying about travel plans during a traffic stop may form a basis for reasonable suspicion). Further, the district court credited Officer Cobb's testimony that upon being questioned by the officers, Atchley tensed up and did not respond. We have found that such nervous and evasive behavior is a factor that may be considered in determining reasonable suspicion. *Caruthers*, 458 F.3d at 466 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Based on a totality of the circumstances analysis, we find that Atchley's lying and his demeanor, when considered in conjunction with the informant's tip, were enough to justify the officers' reasonable suspicion of criminal activity.

Once the officers suspected that Atchley and his companions were manufacturing methamphetamine inside room 139, they were permitted to briefly detain and question them further. *Hayes v. Florida*, 470 U.S. 811, 816 (1985). Based on Atchley's nervous behavior and Officer Cobb's past experience, Cobb was justified in handcuffing Atchley as a safety precaution. Such a measure is appropriate even when police are merely detaining, but not arresting, a suspect. *See, e.g., Houston v. Does*, 174 F.3d 809, 814 (6th Cir. 1999) (citations omitted) (noting that when an officer fears for his safety, the use of handcuffs does not exceed the bounds of a *Terry* stop, nor does it transform the stop to a formal arrest).

### B. The Protective Sweep of Room 139 Was Permissible

Although an occupant has a reasonable expectation of privacy in his motel room, *Stoner v. California*, 376 U.S. 483, 490 (1964), a protective sweep is permissible when after placing a suspect under arrest,[3] officers have a reasonable fear, based upon specific and articulable facts, that the area to be swept may harbor an individual or individuals who present a threat to officer safety. *Maryland v. Buie*, 494 U.S. 325, 334 (1990).[4] Because such a sweep may be performed without a warrant, probable cause, or even reasonable suspicion, officers should limit the scope of their search to areas where it is possible for individuals to hide. *Id.*

Although Atchley and the police were approximately 20-30 feet outside the room, we hold that the protective sweep was warranted. The facts in this case are somewhat similar to those in *United States v. Biggs*, 70 F.3d 913 (1995), where we held that a protective sweep of a motel room 20-75 feet from the arrest site was constitutional. We found that there were several articulable facts which would lead a reasonable officer to believe that another person was hiding inside the motel room. *Id.* at 916. For example, the officers had information that another person would be meeting the defendant at the motel room, but had not observed anyone enter and therefore did not know if that person was already inside the room. Further, the room's door was open so if anyone was inside, he would have a clear view of the arrest site. Finally, the officers knew that the defendant had been arrested twice before for possession of a firearm, which justified them accompanying him back into the room so he could retrieve clothing and shoes. *Id.* at 916. In this case, the arrest site was a similar distance from the hotel room. Two of Atchley's companions escaped (one was later apprehended), and because officers were distracted during the scuffle, they could not be sure whether anyone had reentered the room. Also similarly, the door of the room was open. And in fact, while still outside, officers were able to observe a handgun (later determined to be loaded) lying on the bed in plain view. These factors, combined with the suspects' conduct, reasonably led officers to believe that they might be in danger, and thus the protective sweep was justified.

### C. The Officers Lawfully Seized Incriminating Objects in Plain View

Once the officers were legitimately inside Atchley's motel room in order to conduct the protective sweep, the officers could lawfully seize any object in plain view so long as the object's incriminating character was immediately apparent and the officers had a lawful right of access to the object itself. *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). The Supreme Court has explained that "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming

---

[3] Following his violent outburst, Atchley was placed under formal arrest.

[4] As Atchley's brief correctly states, the search of the motel room would *not* have been lawful as a search incident to arrest. Appellant's Br. at 15-17. Such a search is permissible only if it is constrained to an area within an arrestee's immediate control, *Chimel v. California*, 395 U.S. 752, 763 (1969), and in this case, Atchley was at least 20 feet from the room. However, this search was appropriate as a protective sweep.

that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980).

The items initially viewed by the officers were lawfully seized under the plain view doctrine. Such items included, in addition to the handgun, two large glass jars appearing to contain a solvent, a large bottle of gas line anti-freeze,[5] a bottle of rubbing alcohol, and a police radio scanner. Atchley argues that the seizure of the handgun was impermissible because there was nothing readily apparent that established its illegality. This argument fails, for even if a loaded handgun is legally possessed, because of its inherently dangerous nature, police may seize it if there are articulable facts demonstrating that it poses a danger. *See Coolidge v. New Hampshire*, 403 U.S. 443, 472 (1971); *Bishop*, 338 F.3d at 628-29. With respect to the other items, police were reasonable in believing, based on their experience and the now-corroborated anonymous tip, that they were being used for an unlawful purpose, namely, the manufacturing of methamphetamine. *See, e.g., United States v. Chesher*, 678 F.2d 1353, 1356-57 (9th Cir. 1982) (holding that the officers' observation in plain view of glassware typical of a drug laboratory and the odor of acetone was sufficient to justify seizure of the items, despite the fact the objects were not "conclusively incriminating").

## D. Exigency Justified the Officers' Search and Seizure of Items Not in Plain View

Once police observed incriminating objects in plain view, they looked inside of a refrigerator, ice chest, drawer, and ammunition can. Because it would be impossible for an individual to hide within any of those compartments, this part of the search clearly exceeded the scope of the protective sweep. Thus, even if the objects observed in plain view would have established sufficient probable cause for the police to obtain a warrant, because the police did not procure a warrant, the evidence obtained from this part of the search must be excluded unless the search falls within an exception to the warrant requirement. *United States v. Plavcak*, 411 F.3d 655, 661 (6th Cir. 2005). One such exception arises when, considering the totality of the circumstances, an officer reasonably finds that sufficient exigent circumstances exist, such as a risk of danger to police or others. *Id*. at 663. Exigent circumstances must be unanticipated, meaning that an officer cannot manipulate a situation so as to create the exigency. *United States v. Chambers*, 395 F.3d 563, 566 (6th Cir. 2005). It is the government's burden to prove the existence of exigency. *Id*. at 569 (citing *Coolidge*, 403 U.S. at 455). Thus, the question here is whether, once the objects in plain view were observed, a reasonable officer would believe that there were exigent circumstances justifying a more extensive search.

We find that based on the tip and the evidence found in the room, the officers were objectively reasonable in believing that the occupants of room 139 were manufacturing methamphetamine. In most cases, finding evidence of drugs would not establish the exigency necessary to validate a warrantless search. However, we have found cases involving methamphetamine labs where other people are in the vicinity to be an exception to the general rule due to the dangers associated with the cooking of methamphetamine and the storage of chemicals used to make methamphetamine. *See United States v. Layne*, 324 F.3d 464, 470-71 (6th Cir. 2003); s*ee also United States v. Rhiger*, 315 F.3d 1283, 1290 (10th Cir. 2003) (holding that warrantless entry of a residence was justified where agents observed the defendants purchasing materials used to make methamphetamine, smelled the odor of cooking methamphetamine, and were aware of the "the potential explosiveness of an active methamphetamine lab"); *United States v. Spinelli*, 848 F.2d 26, 30 (2d Cir. 1988) (holding that due to the flammable and explosive nature of the chemicals used

---

[5]The anti-freeze was especially suspicious given that it was May in Tennessee.

to make methamphetamine, the exigent circumstances test was met, thus warranting officers' violation of the knock and announce rule).[6]

We therefore hold that the district court did not err in denying Atchley's motion to suppress. Because exigency justified the search, we need not address the government's alternative argument that the evidence seized from the motel room was inevitably discoverable because Atchley consented to the search.

IV

On August 10, 2004, the government issued its second superseding indictment. This resulted in a postponement of the trial date until September 7, 2004. On August 30, 2004, after the discovery deadline had passed, and just one week before the trial date, the government found an official forensic chemistry report which was dated August 27, 2001.[7] Upon the report's discovery, the government's attorney immediately faxed it to Atchley's attorney. Atchley filed a motion arguing that this report should be excluded under Fed. R. Crim. P. 16(d)(2), which provides that if a party fails to comply with the court's discovery order, the court *may* prohibit the party from introducing the evidence. The district court denied the motion, noting that the government's attorney immediately sent Atchley's attorney a copy when he became aware of the report, and finding that the government's attorney acted in good faith and did not deliberately violate or refuse to comply with the discovery order or Fed. R. Crim. P. 16. *Atchley*, 2004 U.S. Dist. LEXIS 25541, at *10. The court further found that Atchley had not shown that he would suffer any undue or unfair prejudice by having received the report so late. *Id.* at *11.

This appeal is the first time Atchley raises the argument that the second superseding indictment of August 10, 2004 violated his due process rights. He connects this argument with the disclosure of the forensic report, maintaining that had the trial proceeded as originally scheduled (that is, had it not been delayed due to the second superseding indictment), the government would never have been able to introduce the evidence contained in the forensic report because it had not been discovered by the time of the original trial date. He contends that the government intentionally withheld the report and then issued the second superseding indictment, which postponed the trial date, in order to gain additional time to prepare for trial.

The government argues that because Atchley failed to present his due process argument before this appeal, it is reviewed only for plain error. But even if we consider his argument outside of the narrow scope of plain error review, we must still find that Atchley's argument fails. As we have explained, "[a] successful Due Process claim for pre-indictment delay requires that a defendant establish: (1) prejudice to his right to a fair trial, and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." *United States v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003); *see also United States v. Marion*, 404 U.S. 307, 324-25 (1971). The intent element requires an indication that the government knew about the report before it issued the second superseding indictment on August 10, but chose to withhold it until August 30. However, in its

---

[6]We do not intend to say that there should be a *per se* rule that whenever evidence of a methamphetamine laboratory is apparent, there is always exigency. As Detective Dunn testified, particularly important in this case is the fact that because the laboratory was in a motel, the possibility of explosion posed a great risk to the numerous other occupants in the building. Further, many hotels have a central ventilation system that would allow fumes to easily permeate the rest of the building. As we explained in *Layne*, the defendant's apartment-based laboratory posed a greater threat to human lives than if the laboratory had been in a rural area. *Layne*, 324 F.3d at 471. We noted that the Federal Sentencing Guidelines actually distinguish between "residential neighborhood[s]" and "remote area[s]." *Id.* Thus, had Atchley's laboratory been in a barn in the middle of a farm with no other occupied structures nearby, as opposed to a motel, exigency may not have justified the officers' search beyond the protective sweep.

[7]This report identified the substances found in the motel room as methamphetamine.

ruling on Atchley's motion to exclude the report, the district court credited the government's story that it did not find this report until August 30. We find no clear error in the district court's factual determination that the government did not receive the report until August 30. As such, the government could not have known about the forensic report until after the second superseding indictment was issued and thus could not have intentionally withheld it in order to gain a strategic advantage. Therefore, Atchley cannot prevail on this due process claim.

V

Atchley argues that Counts III, IV, and V, which relate to firearms, should have been tried separately from Counts I and II, which relate to drugs. He states (presumably only with respect to Counts IV and V, the felon-in-possession counts) that evidence of his prior criminal record would prejudice the jury. Atchley contends that bifurcation of the trial would not result in inefficiency or waste of judicial resources. We review a district court's denial of a motion to sever counts under Rule 14 for abuse of discretion. *United States v. Jacobs*, 244 F.3d 503, 506-07 (6th Cir. 2001).

With respect to Count III, use of a firearm in furtherance of a drug trafficking crime, Atchley already conceded at a pretrial conference that given its relation to the methamphetamine counts, it should be tried with Counts I and II.

Whether Counts IV and V should be severed under Rule 14(a) is a closer question because it requires the jury to know that Atchley was convicted of prior offenses, thereby raising the possibility of prejudice. However, Atchley has failed to show he suffered undue prejudice. Atchley had stipulated that he was a convicted felon, and therefore, if the jury found him guilty of possessing a firearm in Count III (the section 924(c) violation), it would necessarily have to convict him of Counts IV and V (violations of section 922(g)). *See United States v. Moreno*, 933 F.2d 362, 370 (6th Cir. 1991) (finding that joinder of a conspiracy count and a section 922(g) count were properly joined because "they involved overlapping proof"). Atchley's stipulation of a prior felony minimizes the possibility of any prejudice based on the subject matter of the prior crime. Also, as the district court found, limiting instructions cautioned the jury to only consider his prior conviction with respect to Counts IV and V, sufficiently curing the possibility of prejudice. *See Jacobs*, 244 F.3d at 507. We therefore find that Atchley has failed to demonstrate that the district court abused its discretion by refusing to bifurcate the trial.

VI

We review a district court's determination regarding the admissibility of evidence of flight for abuse of discretion, *United States v. Dillon*, 870 F.2d 1125 (6th Cir. 1989), and use a four-step analysis in order to decide whether evidence of flight is admissible. Under this analysis,

> the probative value of flight evidence "depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of crime charged."

*Id.* at 1127 (quoting *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)).

Atchley's strongest argument against introduction of this evidence is that the district court made no determination regarding whether an inference could be drawn that his alleged flight was a response to the conduct charged in this case. Supporting his argument is the fact that while out

on bond on the state charges,[8] he was charged with murder in Alabama. Thus, his alleged flight could have been due to the murder charge and not the charges here. Atchley contends that he "was left with the Hobson's choice of allowing the flight evidence to come in undisputed and create the inference of guilt on the instant charge or put on proof about the allegations of murder such that the jury could draw the inference that the alleged flight was from that charge," which of course he declined to do as that would prejudice him greatly. Appellant's Br. at 43.

At the pretrial conference, Atchley objected to the admission of flight evidence. The district court stated that it was inclined to admit the evidence but would wait until it heard the proof at trial. At trial, Atchley did not object to the admission of this evidence or the district court's jury instruction regarding the flight evidence. Had the district court ruled definitively on the objection at the time of the pretrial conference, Atchley's objection would have been properly preserved. Instead, the district court merely stated that it would wait until trial to make a decision.[9] Because the objection was never ruled upon, it was incumbent upon Atchley to renew his objection at trial. Because he did not object at trial, this issue is reviewed for plain error. *Cf. United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000) (holding that a motion *in limine*, particularly one that is not ruled upon, is insufficient to preserve for appeal the objection to the admission of evidence).

Under the plain error review standard, "'before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.' Where all three of these conditions are met, 'an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Meeker*, 411 F.3d 736, 741 (6th Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). Even if admission of this evidence was in error, we hold that given the overwhelming evidence against him, and the district court's instruction that evidence of flight is not dispositive of guilt, its admission did not affect Atchley's substantial rights. Therefore, a new trial is not warranted.

VII

For the reasons above, Atchley's convictions are **AFFIRMED**.

---

[8] As noted *supra* note 2, charges were originally brought in state court. The government admits that Atchley did not know of his federal charges, which are substantially similar to the state charges, until after he had fled.

[9] Specifically, the district court judge stated:
Obviously, I'm not going to give a flight charge until I hear what the evidence in the case is, but I think that if there is evidence of flight after May 21st of 2001, I will allow the evidence in. And then I'll have to make a decision at that time whether or not to give the jury the flight instruction. Anything else?
Atchey's attorney responded that he did not have anything further to say.