[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13061
Non-Argument Calendar

_____

D. C. Docket No. 03-00877-CV-2-SLB-HGD

JERRY WAYNE GLOVER,

Plaintiff-Appellant,

versus

EIGHT UNKNOWN D.E.A. AGENTS/
DRUG TASK FORCE AGENTS FROM
BIRMINGHAM, ALABAMA TASK FORCE,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(February 23, 2007)**

Before BIRCH, CARNES and HULL, Circuit Judges.

PER CURIAM:

Jerry Glover appeals the district court's grant of summary judgment to the eight DEA agents involved in his arrest. Glover bases his claims on 42 U.S.C. § 1983 and Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), asserting that his Fourth, Fifth, Eighth, and Fourteenth Amendment[1] rights were violated. First, Glover contends that his Fourth Amendment rights were violated when the agents unlawfully entered his home without a search warrant and seized evidence. Second, he claims that the agents used excessive force in arresting him when they stripped his clothes off and blasted him with a fire hose for fifteen minutes in below freezing temperatures. The district court found that the agents were entitled to qualified immunity and granted summary judgment in their favor. Glover now appeals.

On January 16, 2002, the agents attempted to secure a search warrant for Glover's residence on the suspicion that he was operating a clandestine methamphetamine lab there. The magistrate judge determined that the agents

---

[1] We find that Glover's Fifth, Eighth and Fourteenth Amendment claims lack merit. The allegations at issue here center on an unlawful search and seizure and should be analyzed under the Fourth Amendment, not the due process clauses of either the Fifth or Fourteenth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989) (noting that "all claims that law enforcement officers have used excessive force . . . or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"). Furthermore, it is clear that the Eighth Amendment only applies to convicted inmates, and Glover was neither convicted nor an inmate at the time the alleged excessive force occurred. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995).

lacked sufficient evidence to merit a warrant. So the agents arranged to have a confidential source enter Glover's house on the pretense of delivering a tank of anhydrous ammonia he had ordered. The ammonia is one of the chemicals used to manufacture methamphetamine. The source was wired and agents were monitoring the situation, ready to raid the alleged lab if necessary. In their affidavits, the agents state that after entering Glover's residence, the source started coughing and complaining of chemical fumes over the wire. Glover claims that he never heard any coughing but admits that the source went upstairs to use the bathroom.

Fearing the source was being exposed to noxious chemicals, the agents entered Glover's house and made the arrest. Glover claims that when the agents entered he stood still, raised his hands and did not resist. Nonetheless, the agents grabbed him and pulled him into the garage. He was then questioned about the presence of guns and chemicals in the house. After about thirty minutes of searching, the agents found only denatured alcohol, a small amount of methamphetamine and an unopened container of anhydrous ammonia in the garage. Nevertheless, one of the agents walked by an exhaust fan that was ventilating the house and received a chemical burn. He went to the emergency room for treatment. Glover does not contest that the agent went to the hospital, but

3

he does claim that there was no chemical burn.

After the search, the agents told Glover that he needed to be decontaminated because he was wet with chemicals. Glover claims that he was only wet with perspiration and that there were no chemicals. The agents did not have the wading pool normally used to decontaminate a suspect, so they created a partial screen with a tarp, had Glover strip naked, and washed him with a fire hose for several minutes. Four of the agents involved in the decontamination attested that Glover was hosed for less than a minute. A neighbor who witnessed the events stated in her affidavit that the hosing lasted about five minutes. Glover claims it lasted fifteen minutes, but he fails to state a specific length of time in his sworn affidavit. The agents also claim the hose was more akin to a garden hose with a shower nozzle, while Glover claims that the pressure was so intense that it took two men to hold the hose. It was cold and windy at the time. After being hosed down, Glover was given a Tyvek suit and placed in one of the agent's vehicles with the heat on.

Glover eventually pleaded guilty to attempting to manufacture methamphetamine, in violation of 21 U.S.C. § 846, and the possession of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(2). He was sentenced to 122-months imprisonment and three years of supervised release. Glover now seeks review of the district court's grant of summary judgment in favor of the agents on

4

his § 1983 claims based on qualified immunity.

We review de novo a district court's grant of summary judgment. Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996). We view the record in the light most favorable to the non-moving party. Id. The moving party has the initial burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). If the moving party is successful, the non-moving party must come forward with evidence beyond the pleadings (i.e., affidavits or other admissible evidence) showing that a genuine issue of material fact exists. Id. at 324, 106 S. Ct. at 2553. "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

Bivens actions are analogous to § 1983 actions, and we will generally apply § 1983 law to Bivens cases. Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995). It is well settled that § 1983, by itself, does not create any substantive rights, "but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870 (1989) (internal quotations and citation omitted). Therefore, to prevail in a § 1983 action, the plaintiff must show that he was deprived of a federal right by a person

5

acting under the color of state law.  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  Here, Glover claims his Fourth Amendment right to be free from an unlawful search and from the use of excessive force was violated.

The district court found that the agents were entitled to qualified immunity and granted summary judgment in their favor.  For qualified immunity to apply, a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred.  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).  We agree with the district court that the agents were performing a discretionary function in (1) entering Glover's residence because they feared a dangerous methamphetamine lab and in (2) decontaminating Glover before exposing officers and other inmates to the toxic chemicals that they thought had saturated his clothing.

As to the second step of the qualified immunity inquiry, Glover bears the burden of demonstrating that (1) that the agents committed a constitutional violation and (2) that the violated constitutional right was "clearly established" at the time of the incident in question.  Id. at 1332.  Following the Supreme Court's directive in Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), we cannot, as the magistrate judge did here, simply assume that a constitutional violation occurred and move on to the "clearly established" prong.  Therefore, we

6

begin our analysis of each claim with a determination of whether there was a constitutional violation. If no violation occurred, our inquiry is concluded and qualified immunity was properly granted.

First, we address Glover's claim that the agents unlawfully entered his house without a warrant and wrongfully seized his property. Even considering the facts in the light most favorable to Glover, the agents did not violate his constitutional rights when they entered his house without a warrant, because there is no need for a warrant when exigent circumstances demand immediate entry. Further, there was no unlawful seizure because all evidence taken was in plain view.

We have held that "when exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home." United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002). Thus, a warrantless search and seizure, even of a home, is justified where both probable cause and exigent circumstances exist. United States v. Davis, 313 F.3d 1300, 1302 (11th Cir. 2002). Here, the agents had probable cause to believe that the confidential source was in danger because of the possible existence of a volatile methamphetamine lab. Holloway, 290 F.3d at 1337 (concluding that "emergency situations involving endangerment to life fall squarely within the exigent

circumstances exception"); <u>Davis</u>, 313 F.3d at 1302 (probable cause exists in emergencies where officers reasonably believe someone is in danger).

The agents knew that (1) the confidential source was coughing and appeared unable to breathe; (2) they had received a tip that Glover was manufacturing methamphetamine and ordering dangerous chemicals, and (3) as stated in the agents' affidavits, the area around the house smelled of chemicals. That evidence was sufficient to justify entry. <u>See, e.g.</u>, <u>United States v. Atchley</u>, No. 04-6521, 2007 WL 148761, at *7 (6th Cir. Jan. 23, 2007) (noting that an exigency may exist in cases involving methamphetamine labs where other people are in the vicinity because of the dangers associated with cooking and storing the chemicals used); <u>United States v. Rhiger</u>, 315 F.3d 1283, 1290 (10th Cir. 2003) (holding that warrantless entry of a residence was justified where agents knew defendant was purchasing materials used to make methamphetamine, smelled the odor of cooking methamphetamine, and were aware of the dangers of an active methamphetamine lab); <u>United States v. Spinelli</u>, 848 F.2d 26, 30 (2d Cir. 1988) (holding that the exigent circumstances test was met because of the flammable and explosive nature of the chemicals used to make methamphetamine).

We note that Glover argues that the agents fabricated evidence and created exigent circumstances so they could enter his home without a warrant.

Nevertheless, this assertion is based solely on Glover's conclusory allegations without the support of any admissible evidence. We have consistently held that such allegations are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (noting that "conclusory allegations without specific supporting facts have no probative value" and that one who "resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial").

Additionally, the agents' seizure of some chemicals and a small quantity of methamphetamine from Glover's home did not violate the Fourth Amendment, because the agents attest that everything seized was in plain view and Glover offered no contrary evidence. If entry into a residence is justified, an officer is permitted to seize any evidence in plain view. United States v. McGough, 412 F.3d 1232, 1238 (11th Cir. 2005). Thus, there was no constitutional violation in either the entry or the seizure, and we need not reach the second prong of the analysis in order to find that the agents were entitled to qualified immunity on Glover's illegal entry and illegal seizure claims.

Second, we address Glover's excessive force argument. To assert a violation of the Fourth Amendment for the use of excessive force, the plaintiff must allege that (1) a seizure occurred and (2) the force used to effect the seizure

was unreasonable. Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1166 (11th Cir. 2005), cert. denied, 126 S. Ct. 1914 (2006). It is clear that some force is permissible in making an arrest. Graham, 490 U.S. at 396, 109 S. Ct. at 1871–72 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). A constitutional violation only occurs when the officer's use of force is "objectively unreasonable" in light of the totality of the circumstances at the time the force is used. Id. at 397, 109 S. Ct. at 1872–73. Our inquiry into "reasonableness" is objective: "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Crosby, 394 F.3d at 1333.

Additionally, we have set out three factors to consider in determining if force was reasonable: (1) the need for the force, (2) the relationship between the need and the amount of force used, and (3) the extent of any injury to the suspect. Lee v. Ferraro, 284 F.3d 1188, 1197–98 (11th Cir. 2002). Thus, the agents are entitled to qualified immunity "if an objectively reasonable officer in the same situation could have believed that the force used was not excessive." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

Based on the facts here, even taken in the light most favorable to Glover, the

decontamination process was not excessive, and qualified immunity was properly granted. The agents' conduct was objectively reasonable in light of the danger Glover would have presented to himself as well as to the officers and other inmates if he was covered in dangerous chemicals. The district court accepted Glover's assertion that the hosing lasted fifteen minutes, but Glover never attested to a specific length of time in his sworn affidavit. The only evidence he submitted on the duration of the hosing was the affidavit testimony of his neighbor who witnessed the events, which Glover submitted with his response to the defendants' reply to the order for a special report. That affidavit says that the hosing lasted about five minutes. Because Glover's bare assertion that he was sprayed for fifteen minutes is not "evidence," viewing the evidence in the light most favorable to him requires us to accept the neighbor's affidavit attesting that the hosing lasted only about five minutes. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) ("A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial.").

Thus, construing the facts in the light most favorable to Glover—his clothes were wet with perspiration, not chemicals, it was thirty-nine degrees outside, and

11

he was hosed down for five minutes—we find that the agents' conduct was reasonable. They knew or had reason to believe that (1) Glover was operating a methamphetamine laboratory in his home; (2) he had some of the necessary chemicals delivered to his house; (3) the chemicals required to produce methamphetamine are extremely dangerous; (4) the confidential source who entered the house had difficulty breathing and complained of the chemical smell; (5) the area around the house smelled of chemicals; and (6) Glover was wet and smelled of chemicals when he was taken from the house.

Even if the agents were mistaken in their belief that Glover was saturated with chemicals, the mistake was a reasonable one. Saucier, 533 U.S. at 206, 121 S. Ct. at 2158–59 (noting that in excessive force cases, "qualified immunity can apply in the event the mistaken belief was reasonable ").

Additionally, we note that the force used here was not excessive, considering typical decontamination procedures. One of the agents noted in his affidavit that under normal DEA protocol an individual suspected of being saturated with dangerous chemicals would be washed in a small wading pool for ten or fifteen minutes. The exposure to the wind and cold likely would have been the same. What's more, Glover alleged no actual injury aside from his brief exposure to the cold. Because, the agents reasonably, even if mistakenly, believed that a

12

decontamination procedure of the duration imposed was necessary before Glover

could be transported safely back to the station, there was no constitutional

violation.

We need not reach either the agents' argument that the statue of limitations

bars Glover's claims or their argument that Glover's claims are barred by the

Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364

(1994), because they would undermine his criminal conviction.

**AFFIRMED.**