NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0590n.06

No. 10-3615

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 07, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| CEDRIC LYONS, | ) | |
| | ) | O P I N I O N |
| *Defendant-Appellant*. | ) | |

BEFORE:     COLE and CLAY, Circuit Judges; MATTICE, District Judge.[*]

COLE, Circuit Judge.  Defendant-Appellant Cedric Lyons appeals his conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm.  Lyons argues that the district court erred in denying his motion to suppress evidence and in permitting allegedly prejudicial questioning during voir dire.  We disagree and AFFIRM.

I.

On May 8, 2009, officers from the Northern Ohio Violent Fugitive Task Force sought to locate Lyons and execute an arrest warrant.  At that time, there were three outstanding warrants for Lyons's arrest: one for armed robbery in Akron, Ohio; one for a parole violation in Ohio; and one

_____

[*] The Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

for escaping from custody in Olympia, Washington. The officers first attempted to locate Lyons at the address he had provided his parole officer. When they failed to find him there, the officers went to the apartment of Diamond Dawkins, where Lyons had recently been arrested on another warrant. When the officers first arrived, they knocked on Dawkins's door, but nobody answered. After a couple of minutes, one of the officers attempted to turn the door handle to verify that the door was actually locked; in response, Dawkins yelled at the officers, asking who was there. The officers identified themselves and requested that she open the door, a request with which she eventually complied with roughly five minutes later.

Once the officers entered the apartment, they informed Dawkins that they had a warrant for Lyons's arrest. Dawkins denied that Lyons was there. Believing otherwise, the officers pressed her on this response, and Dawkins eventually admitted that Lyons was present, and she gave the officers consent to search for him in the small, two-bedroom apartment. The search for Lyons began in the living room and kitchen area, with officers looking in closets and behind couches. The officers proceeded into one of the bedrooms, where they found Lyons hiding under a mattress and box spring.

The officers handcuffed Lyons and moved him out of the bedroom. As they walked Lyons through the living room on their way out of the apartment, an officer noticed a box on the floor. A couch cushion laying over the box partially obscured it, such that the officer could see half the box, including the letters "chester." The officer recognized the object as a box of Winchester ammunition and he nudged the cushion with his foot to get a better view. As he moved the cushion, he also found a fully-loaded handgun underneath it, laying on the floor next to the ammunition.

Because Lyons had previously been convicted of a felony punishable by imprisonment for a term exceeding one year, he was charged under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. Prior to trial, Lyons moved to suppress the box of ammunition and the firearm, but the district court denied the motion. Lyons's first trial resulted in a hung jury and was declared a mistrial; a subsequent jury convicted him under § 922(g)(1), and he was sentenced to the mandatory minimum of 210 months' imprisonment. Lyons now appeals his conviction, alleging that the district court erred in denying his motion to suppress evidence and in permitting allegedly prejudicial questioning during voir dire.

II.

In reviewing the denial of a motion to suppress, we view the evidence "in the light most likely to support the district court's decision," and review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004) (citing *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000)) (other citations omitted). We may affirm the district court's denial of a motion to suppress "if proper for any reason even one not relied upon by that court." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) (alteration, internal quotation marks, and citation omitted).

The district court correctly denied Lyons's motion to suppress because the box of ammunition and the handgun were in plain view. The officers seized the firearm and ammunition while lawfully present in Dawkins's apartment to execute an arrest warrant. *See Payton v. New York*, 445 U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant . . . implicitly carries with it the limited authority to enter a dwelling . . . when there is reason to believe the suspect

is within."). "Once the officers were legitimately inside [the apartment] . . . the officers could lawfully seize any object in plain view so long as the object's incriminating character was immediately apparent and the officers had a lawful right of access to the object itself." *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007) (citations omitted).

While walking Lyons through the living room, an officer observed a box of ammunition laying in plain view. Although a couch cushion partially obscured the box, the officer was able to read part of the name brand of the ammunition, and immediately recognized the object as a box of ammunition. Because the officers were aware that Lyons was a previously-convicted felon and therefore was not permitted to possess ammunition or a firearm, *see* 18 U.S.C. § 922(g), the incriminating nature of this box of ammunition was immediately apparent. Therefore, the officer was permitted to seize the box of ammunition given that its incriminating nature was immediately apparent even as it sat in plain view. *See Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (permitting a plain view seizure "only where it is immediately apparent to the police that they have evidence before them"). Once the officer moved the couch cushion, the firearm was then in plain view, permitting the officer to seize it lawfully. Thus, the officer seized the box of ammunition and the firearm through a lawful plain view seizure, and the district court properly denied Lyons's motion to suppress.

Lyons additionally contends that the district court erred in permitting allegedly prejudicial questioning during the second trial's voir dire. The prosecutor informed the potential jurors during voir dire that "there will not be in this case any evidence of the following five things. There will be no fingerprint evidence. There will be no DNA evidence. There will be no surveillance photographs

or videos. There will be no audio recordings, no written statement." The prosecutor then asked "knowing that, . . . is there anyone who could not find guilt beyond a reasonable doubt without those, fingerprint evidence, DNA evidence, surveillance photographs, video audio recordings, or written statement?" The court then clarified this question by emphasizing to the potential jury that "[y]ou have to decide the case based upon what the evidence is that is presented . . . . [a]nd the question is, can you decide the case based upon what you do hear in the evidence in spite of that type of evidence not being presented?"

Lyons alleges that the above exchange was so highly prejudicial so as to deprive him of an impartial jury. He contends that the prosecutor's question effectively removed his ability to use the lack of physical evidence as his defense because the jurors had already committed to returning a conviction even in the absence of such evidence. Because we afford district courts wide discretion in voir dire, the questions "put to the jury will not be disturbed without a clear showing of abuse of discretion." *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973). We will reverse only if we are left with "a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006) (internal quotation marks and citations omitted). Here, we find no such error of judgment. As the district court's clarifying statements to the jury indicate, the prosecutor's question sought, not a promise to convict in the absence of physical evidence, but rather a commitment to review only the evidence presented at trial. As such, this question did not interfere with Lyons's right to an impartial jury, as each juror committed to "lay[ing] aside his impression or opinion and render[ing] a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

III.

For the foregoing reasons, we AFFIRM.