with criminal activity, the item is not immediately incriminating." *United States. v. Byrd*, 211 F.3d 1270, 2000 WL 491511, **3 (6th Cir. 2000) (unpublished opinion). Based on the *Beal* factors this Court has used before and this statement in *Byrd*, we find the evidence against McLevain was not "intrinsically incriminating, and it was not "immediately apparent" that the evidence provided probable cause that it was contraband.

### E.

The final aspect of the "plain view" doctrine requires that an officer have a lawful right of access to the object at issue. We said in *Coolidge*, "plain view alone is never enough to justify the warrantless seizure of evidence." 403 U.S. at 468. As noted in *Horton*, this requirement of a lawful right of access means that generally an officer should get a warrant if possible before he seizes an item in plain view. He cannot seize absent exigent circumstances. If he could obtain a warrant, then the he cannot use the "plain view" exception for the evidence. 496 U.S. at 137, fn 7.

Acquisito had before him the cut cigarette filter, the twist tie, and a spoon with residue on it, if not the prescription bottle, when he field-tested the spoon. Before seizing the spoon and testing it, he suspected the items were drug paraphernalia. He should have sought a warrant at that time. The evidence was not going anywhere. McLevain was in custody, and his girlfriend and two children were still in the house. Acquisito should have taken his evidence of probable cause to a magistrate rather than attempting to seize it under the "plain view" exception. Acquisito had no lawful right of access to the items.

### III.

For the foregoing reasons, we REVERSE.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0390P (6th Cir.)
File Name: 02a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

ROGER DALE MCLEVAIN,
    *Defendant-Appellant.*

No. 01-5151

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 00-00001—Joseph H. McKinley, Jr., District Judge.

Argued: September 17, 2002

Decided and Filed: November 12, 2002

Before: MARTIN, Chief Circuit Judge; MOORE, Circuit Judge; WISEMAN, Senior District Judge.[*]

———————

### COUNSEL

**ARGUED:** Tonya S. Rager, McCOY, WEST, FRANKLIN & BEAL, Lexington, Kentucky, for Appellant. Erwin Roberts, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** John K.

———————

[*]The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

West, McCOY, WEST, FRANKLIN & BEAL, Lexington, Kentucky, for Appellant.  Erwin Roberts, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Chief Circuit Judge.  Roger Dale McLevain appeals his conviction and sentence for violation of 21 U.S.C. §841(a)(1) on the grounds that (1) the district court erred in denying McLevain's motion to suppress, (2) the district court erred in admitting several pieces of evidence of prior bad acts, (3) the communication between the court and jury outside defense counsel's presence violated McLevain's rights, and (4) the district court misapplied *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in sentencing.  Because we find that the district court erred in admitting evidence that should have been suppressed, we REVERSE.

I.

On December 28, 1999, Gary Cauley failed to return from work release at the Daviess County Detention Center in Daviess County, Kentucky.  Based on information from a confidential informant, the Daviess County Jailer Harold Taylor sought a search warrant for Roger Dale McLevain's house at 8865 Sacra Drive, Maceo, Kentucky, in the early afternoon of December 29.  McLevain is the defendant now before us.

The affidavit supporting the search warrant suggested a connection between McLevain and Cauley's girlfriend, Lydia Bell.  The informant told the police that Bell had been staying at McLevain's residence, and she had been picked up from there by a friend on the night Cauley escaped.  She went to Cauley's mother's house, where she received a call from Cauley at the Detention Center.  Bell then borrowed Cauley's

experiences as law enforcement agents that led them to believe that the seemingly quotidian objects were actually drug paraphernalia. The connection between these items and illegal activities, however, is not enough to render these items intrinsically incriminating.  The connection is not enough to make their intrinsic nature such that their mere appearance gives rise to an association with criminal activity.

The final *Beal* factor examines whether "the executing officers can *at the time*[3] of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature."  810 F.2d at 577 (emphasis in original).   In *United States v. Szymkowiak*, 727 F.2d 95, 95 (6th Cir. 1984), the United States had a warrant to search Szymkowiak's home for a television set and some jewelry, and the officers executing the warrant found and seized two guns.  The officers thought that the guns had been illegally adjusted to rapidly fire.  *Id.*  The officers had to call an agent from the Bureau of Alcohol, Tobacco and Firearms to determine whether the guns were illegal.  *Id.* at 96. We said, "From the facts available to the executing officers in the case before us, they could not determine whether they had discovered evidence of a criminal nature." *Id.* at 99. Similarly, from the facts available to the officers in McLevain's home, at the time of discovery, they could not determine if they had seen evidence of criminal activity.

In a very recent case from this Court, we held, "when an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association

_____

[3] Other circuits dispute this factor, as to whether probable cause must arise upon viewing the object or may arise later.  The Court of Appeals for the First Circuit, for example, says probable cause may arise in light of other objects later discovered.  *United States v. Johnston*, 784 F.2d 416, 420 (1986).  The Court of Appeals for the Tenth Circuit, however, said very recently, "upon viewing the object, the officer must *at that moment* have probable cause to believe the object to be contraband or evidence of illegal activity."  *United States v. Tucker*, 2002 WL 31053969, *7 (10th Cir. 2002) (emphasis added).

or a bottle that makes it immediately apparent that those items are contraband. In *McLernon*, a room was searched pursuant to a cocaine conspiracy, and agents seized a note pad and calendar from a desk, under the "plain view" exception. 746 F.2d at 1104. We said, in that case, these items "were hardly 'intrinsically' incriminating. Indeed such items are found in plain view of virtually every desk across this country. We do not, and cannot, subscribe to a rule of law which allows officers of the state to seize an item as evidence *merely* because it is in 'plain view.'" *Id.* at 1125 (emphasis in original). We found that the agents could not have immediately perceived those items as incriminating; "the agents' 'immediate' perceptions produced only visual images of two 'intrinsically innocent' items." *Id.* Similarly, the items found in McLevain's home might be found under beds, in sinks, and on mantels in many homes, and not exclusively those where methamphetamine is being used. While the cut cigarette filter and the prescription bottle with fluid in it might be out of the ordinary, the police are not authorized to seize odd items. We do not care what the explanation is for the items, but we care that there may be some other explanation for the items. Defense counsel pointed out at oral argument that sometimes smokers who do not want filters in their cigarettes remove them. The "plain view" exception authorizes seizure of only those items that "immediately app[ear]" to be contraband.

In one sense, the facts of this case are similar to those of *Texas v. Brown.* In that case, an officer made a "plain view" seizure of narcotics at a routine driver's license checkpoint. *Id.* at 730. In asking for the driver's license, the officer saw an opaque party balloon, tied at the end, drop from Brown's hand. *Id.* The officer knew from his experiences in previous narcotics arrests and from conversations with other officers that balloons tied as Brown's was were often used to carry narcotics. *Id.* at 742-743. In this case, Detective Acquisito also testified that from his experiences as a narcotics officer he suspected that the twist tie, cigarette filter, spoon, and prescription bottle with liquid were being used with methamphetamine. In both cases, it was the officers's

mother's car and returned it about an hour and a half later. The affidavit contained no information as to McLevain himself, but Cauley and McLevain were known to be friends. On the basis of this information, Taylor sought a search warrant for McLevain's house. A state court judge determined that Taylor had probable cause to believe that Cauley could be at McLevain's residence, and he issued the warrant to search the residence. The warrant described the residence to be searched, including the detached garage and the outbuilding, and named Cauley and McLevain to be seized. It has never been explained why McLevain was included.

Taylor sought assistance from the Daviess County Sheriff's Department. That department was aware that McLevain had a criminal record with a narcotics offense. Officers of both the Daviess County Detention Center and the Daviess County Sheriff's Department executed the warrant at McLevain's home at about 2:00 p.m. on December 29. Law enforcement officers surrounded the home and forcibly entered through both the front and the back doors. The officers at the front door immediately seized McLevain in the hallway and gained control over his girlfriend and two children in the front room. The officers then began searching for Cauley. Narcotics Detective Jim Acquisito went into the master bedroom, from where McLevain had just emerged, and looked under the bed for Cauley. Acquisito saw there a twist tie and a cut cigarette filter. He suspected these items to be drug paraphernalia. He informed his supervisor and took photographs of this evidence, although he left it undisturbed.

Later in the search for Cauley, who was never found at McLevain's home, another officer drew Acquisito's attention to a spoon with residue on a tackle box in a sink in the garage. Acquisito conducted a field test on the residue, and he found it to be residue of methamphetamine. At about the same time, Acquisito noticed on the mantel of the fireplace in the garage a prescription bottle, with no label, filled with a clear liquid that looked like water. Acquisito identified these four items as drug paraphernalia, and he used them to establish probable

cause in seeking a second warrant. Upon returning with the second warrant, the officers discovered, concealed inside a kerosene heater in the garage, approximately eighty-five grams of methamphetamine; $5,710 in cash; and various plastic bags, syringes, twist ties, and electronic scales. These items formed the basis for the charges against McLevain.

McLevain filed a motion to suppress, objecting to the plain view discovery of the evidence in the first search. He argued that none of the first four pieces of evidence was immediately incriminating. He also argued that the discovery took the officers beyond the scope of a search for an escapee. The district court denied this motion.

## II.

We review a district court's legal conclusions with respect to a motion to suppress de novo. *See United States v. Crozier*, 591 F.3d 503, 510 (6th Cir. 2001). A district court's findings of fact will be upheld unless clearly erroneous. *Id.*

## A.

The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. Generally, a warrant based on information establishing probable cause is required to search a person or a place and to seize evidence found there. The warrant requirement exists to measure the probable cause asserted and to ensure that "those searches deemed necessary are as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists . . . ." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

There exist several exceptions to the warrant requirement, but at issue in the case before us is the "plain view" exception to the warrant requirement. In *Coolidge,* 403 U.S. at 465, the Supreme Court held that "under certain circumstances the police may seize evidence in plain view without a warrant." This holding was consistent with *Harris v. United States*, 331 U.S. 145, 155 (1947), which held "If entry upon the premises

factors offer a context within which to evaluate the search and seizure of the four items in McLevain's house.

Before turning to the facts of similar cases and the facts at hand, we should also note that the Supreme Court does not require that officers *know* that evidence is contraband. Instead, "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citing *Carroll v. United States,* 267 U.S. 132, 162 (1925)).

We begin with the first of the *Beal* factors. No nexus between the object seized and the items in the search warrant exists in our case. Cauley was the subject of the search. McLevain was an afterthought that has never been explained. The warrant had nothing to do with drug paraphernalia.

The second factor is whether the "intrinsic nature" of the items gives probable cause to believe it is contraband, such as marijuana or cocaine on a table in plain view. The case of *Arizona v. Hicks*, 480 U.S. 321 (1987), is instructive. In that case, the police entered an apartment to search for a shooter. While they were there, an officer saw stereo equipment that he thought was incongruous in the otherwise poorly furnished apartment. *Id.* at 323. The officer suspected the stereo was stolen, so he moved the equipment in order to read the serial numbers. *Id.* The Supreme Court found that "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." *Id.* at 325. There was nothing about the "intrinsic nature" of the stereo equipment that proclaimed it as contraband.

McLevain claims that there is nothing about the intrinsic nature of a twist tie, a cigarette filter, a spoon with residue,

warrant was executed. Thus he did not shortcut the system, but he did cut the corner. Citing to *Sanchez*, this Court has said, "In this circuit, a federal agent may 'tag along' on a state search without tainting evidence of federal crimes uncovered in the process if he has no probable cause to search which would allow him to obtain a separate federal warrant." *United States v. Bonds*, 12 F.3d 540, 571 (6th Cir. 1993). Detective Acquisito, just like the federal officers in *Bonds*, could help to execute the search warrant as they looked for Cauley.

### D.

Once we have established that the officers were lawfully present, the next prong of the "plain view" doctrine requires that the criminality of the articles before the officers be "immediately apparent." *Coolidge,* 403 U.S. at 466. This requirement, we found in *United States v. McLernon*, 746 F.2d 1098, 1125 (6th Cir. 1984), limits the use of the "plain view" exception in two important ways. Requiring that evidence be "immediate" and "apparent" constrains the expansion of the limited search authorized by the warrant into a generalized search, and it prevents officers from having an opportunity to create a reason to expand the search. *Id.*

This Court has long deliberated what "immediately apparent" means. We summarized the factors used in many of our prior cases in *United States v. Beal*, 810 F.2d 574, 576 -577 (6th Cir. 1987). We found that while none of these factors is necessary, they are instructive as to what this court has used to find that the criminality of a piece of evidence was "immediately apparent." *Id.* The factors include 1)"a nexus between the seized object and the items particularized in the search warrant," 2)"whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity," and 3)whether "the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature." *Id.* (internal citations omitted) (emphasis in original). These

be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

Although the specific circumstances under which the "plain view" exception comes into play vary, "[w]hat the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge,* 403 U.S. at 466. The Supreme Court went on to say, however, "the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the plain view doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.* Thus came the "plain view" exception to the warrant requirement: requiring that officers be legally present and see something that immediately appears to be evidence.

The "plain view" test was refined in *Horton v. California*, 496 U.S. 128, 137 (1990), when the Supreme Court clarified that "plain view" requires four factors. In addition to the two above, the item seized must actually be in plain view, and the officer "must also have a lawful right of access to the object itself." *Id.* Here *Horton* cites to *Coolidge*: "'This is simply a corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances."'" *Id.* at 137, fn 7.

### B.

We now turn to the analysis of the four prongs of the "plain view" exception. While there was dispute at the district court level as to whether or not the items seized in McLevain's home were actually in plain view, the district court weighed

the credibility of the testimony and found that they were. We need not further address this issue.

McLevain complains that the search and seizure of the evidence against him, as a basis for a second warrant, was particularly egregious in light of the fact that the search was for two full-grown men. While the Supreme Court held in *Harris*, "The same meticulous investigation which would be appropriate in a search for two small canceled checks could not be considered reasonable where agents are seeking a stolen automobile or an illegal still," 331 U.S. at 152-153, the items found in this case were under a bed and in the garage, where a man could hide. While a man could not perhaps hide in a sink or on a mantel, the plain view is objectively reasonable.

### C.

We then turn to the other three factors of the "plain view" exception. In order to determine whether the officers were legally present at McLevain's residence, we begin with the first warrant that was the basis for the officers' presence in the McLevain residence. We look to the first warrant to define the scope of the original search.

To begin, "In determining whether a search warrant is supported by probable cause, a magistrate must employ a flexible, totality of the circumstances standard." *United States v. Canan*, 48 F.3d 954, 958 (6th Cir. 1995). Further, we said in *United States v. Czuprynski*, 8 F.3d 1113, 1116 (6th Cir. 1993), "A warrant to search property in which the owner has a reasonable expectation of privacy shall not be issued absent a sufficient basis for finding probable cause to believe that contraband or evidence is located in a particular place." The final element of this analysis involves great deference to the finding of probable cause by the state court judge issuing a warrant. *Id.*

In *United States v. Leon*, 468 U.S. 897, 915 (1984) (internal citations omitted), the Supreme Court said,

Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances or because the form of the warrant was improper in some respect.

While granting due deference to the state court judge, we question why McLevain was named for seizure in the warrant. The United States offered no evidence of his having played an active role in facilitating or effectuating Cauley's escape. Nevertheless, we find that the warrant was valid, and the officers were lawfully present at McLevain's house.[1]

McLevain also takes issue with the presence of the narcotics officers at the search of his home. "When a law enforcement officer has prior knowledge of the existence and location of property which he has probable cause to believe is illegally possessed, as well as ample opportunity to obtain a judicially sanctioned search warrant, the Fourth Amendment mandates that he must follow this procedure." *United States v. Sanchez*, 509 F.2d 886, 890 (6th Cir. 1975). These facts are not before us. Although Acquisito testified that he was pleased to have a chance to execute a warrant for McLevain's home[2], he nevertheless did not have prior probable cause to obtain a warrant on his suspicions before the fleeing felon

---

[1]McLevain, at the district court and before this Court, challenged the lawfulness of the search on the basis that the officers did not properly knock and announce before making entry into his home. The district court found that although the officers may not have waited an appropriate time after their announcement, exigent circumstances existed, making entry proper. Because we find that the search failed on other grounds, we need not answer this question.

[2]The Supreme Court has been "unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers," *Whren v. United States*, 517 U.S. 806, 813 (1996).