**Lawrence Elmer PATE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2005–SC–000654–MR.

Supreme Court of Kentucky.

May 24, 2007.

As Modified on Denial of Rehearing Nov. 1, 2007.

As Corrected Jan. 23, 2008.

Barbara Anderson, F.J. Anderson, Lexington, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Lawrence Elmer Pate, was convicted of manufacturing methamphetamine (second or subsequent offense) and sentenced to twenty years' imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). For the reasons set forth herein, we affirm Appellant's conviction.

On September 17, 2002, Kentucky State Police Sergeant Thomas Lilly was tasked to execute an arrest warrant on Appellant. When Sergeant Lilly went to Appellant's residence, he observed a black pressure tank sitting outside Appellant's door with what appeared to be a green corroded fitting on the top and a section of pipe with a valve welded to the bottom. Sergeant Lilly testified that he had been trained to look for green corrosion on the outside of pressure tanks since it is a sign that the tank has been used to hold anhydrous ammonia (a component of methamphetamine manufacture).

When Lilly knocked on the door, Appellant's wife, Kathy Pate, answered. Sergeant Lilly told Mrs. Pate that he had a warrant for Appellant's arrest and inquired if Appellant was home. Mrs. Pate answered that Appellant was not in the apartment. Sergeant Lilly then asked Mrs. Pate if she minded if he came in and looked around to make sure Appellant was not in the apartment. Mrs. Pate consented. When Sergeant Lilly entered the apartment he observed numerous items in plain view. These items included: buckets with pressure fittings hooked to it and tubing attached, miscellaneous tubing, pipe fittings, a metal dish filled with metal fittings that was boiling on the stove, and two grey Tupperware bins that were filled with similar items. From his experience, Lilly believed that he had observed all of the equipment, utensils, and tubing necessary to manufacture methamphetamine in and around Appellant's residence. In fact, as Sergeant Lilly entered the apartment, he asked Mrs. Pate, "What is all this stuff?" She answered that Lilly knew what it was, and then stated that it was the equipment that her husband, Appellant, used to make methamphetamine. Because he was concerned with the possible health hazard located in the apartment, Sergeant Lilly immediately called for backup. The evidence was subsequently seized and used against Appellant at trial.

After securing the evidence, Sergeant Lilly eventually found Appellant. Appellant was watching the seizure from a nearby apartment. When Lilly told Appellant he had a warrant for his arrest, Appellant

complained that the items seized from the apartment were his and that they were being taken illegally. He also blurted out that the officers would find no methamphetamine residue on the items.

Appellant and Mrs. Pate were indicted jointly for complicity to manufacture methamphetamine. Mrs. Pate pled guilty to facilitation and agreed to testify against Appellant at trial. Appellant was subsequently found guilty by jury of manufacturing methamphetamine. He now appeals to this Court and we affirm.

## I. There were no unreasonable searches and seizures within Appellant's apartment.

■ Appellant claims that the seizure of the items at his apartment violated his right to be free from unreasonable searches and seizures. Citing *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), he first claims there is not substantial evidence in the record to support the trial court's ruling that Mrs. Pate's consent to search was valid. We disagree.

■ "Whether consent is the result of express or implied coercion is a question of fact … and thus, we must defer to the trial court's finding if it is supported by substantial evidence." *Krause v. Commonwealth*, 206 S.W.3d 922, 924 (Ky.2006). Appellant claims that since Sergeant Lilly told Mrs. Pate that he had an arrest warrant, Mrs. Pate's consent to search was nothing more than mere "acquiescence to a claim of lawful authority." *Bumper, supra*, at 549, 88 S.Ct. 1788.

However, the facts supporting the holding in *Bumper, supra*, differ significantly from the facts supporting the trial court's ruling in this case. In *Bumper*, the law enforcement officer claimed "authority to search [the] home under a warrant, [and] announce[d] in effect that the occupant

ha[d] no right to resist the search." *Id.* at 550, 88 S.Ct. 1788. Here, Sergeant Lilly did no such thing. While he did tell Mrs. Pate that he had a warrant for Appellant's arrest, he did not claim authority to search under the warrant or imply in anyway that Mrs. Pate had no right to resist a search of her home.

■ Sergeant Lilly simply asked whether Mrs. Pate minded if he looked around the apartment to confirm that Appellant was not there. The trial court specifically found "no threats, no force, no assertion of custody over, or a deception practiced upon Mrs. Pate or any other circumstances which would vitiate the voluntariness of her consent." Merely stating that one has a warrant for another's arrest, without any further implication that the government actor is asserting lawful authority to search pursuant to that warrant, does not amount to coercion pursuant to the holding in *Bumper, supra*. There is substantial evidence in the record to support the trial court's ruling that Mrs. Pate's consent was voluntary and not coerced.

■ Once inside the apartment, Appellant next alleges that Sergeant Lilly had no right to seize the items without a search warrant. He contends the plain view exception to the warrant requirement is inapplicable since the incriminating character of the items was not "immediately apparent." *See Hazel v. Commonwealth*, 833 S.W.2d 831, 833 (Ky.1992)(citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). We find such a contention to be without merit.

Sergeant Lilly testified that from his experience, he recognized the equipment in and around Appellant's residence as the type which is commonly used during the manufacture of methamphetamine. Moreover, when Lilly asked Mrs. Pate what all

of it was, she admitted that it was equipment used to make methamphetamine. Under these circumstances, there is no doubt that probable cause existed to believe that the items were associated with criminal activity and thus, subject to immediate seizure. *See Texas v. Brown*, 460 U.S. 730, 741–742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) ("[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity").

Finally, Appellant alleges that even if the items in plain view were immediately incriminating, items contained in two grey Tupperware bins were not in plain view, and therefore, the plain view exception to the warrant requirement could not have applied to those items. Citing *United States v. McLevain*, 310 F.3d 434 (6th Cir.2002), he additionally argues that the plain view exception to the warrant requirement cannot be utilized to justify a warrantless seizure in the absence of exigent circumstances. *Id.* at 443 ("this requirement of a lawful right of access means generally an officer should get a warrant if possible before he seizes an item in plain view").

▆▆▆ Without addressing whether Appellant's interpretation of *McLevain*, *supra*, is correct, it is enough for us to simply state that exigent circumstances did exist to justify the warrantless seizure of the equipment in Appellant's apartment. Another exception to the warrant requirement arises when, considering the totality of the circumstances, an officer reasonably believes that an immediate search or seizure is necessary in order to avoid a "risk of danger to police or others." *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir.2007) (citing *United States v. Plavcak*, 411 F.3d 655, 661 (6th Cir.2005)), *see also,*

*United States v. Bishop*, 338 F.3d 623, 628–629 (6th Cir.2003)(police may seize objects of inherently dangerous nature if there are articulable facts demonstrating that it poses a danger to police or others).

In this case, Sergeant Lilly walked into what he believed to be a methamphetamine lab. There was equipment everywhere, a pot containing metal fixtures actively boiling on the stove, and a resident who confirmed that the equipment was used to manufacture methamphetamine. In light of these circumstances, it was objectively reasonable for Sergeant Lilly to believe that immediate seizure of any and all items associated with the illegal activity, including the items in the Tupperware bins, was necessary in order to avoid a "risk of danger to police or others." *Atchley*, 474 F.3d at 850 ("cases involving methamphetamine labs where other people are in the vicinity ... [pose] dangers associated with the cooking of methamphetamine and the storage of chemicals used to make methamphetamine"); *see also United States v. Layne*, 324 F.3d 464, 470–71 (6th Cir.2003)(noting the "inherent dangers of methamphetamine manufacturing"); *United States v. Rhiger*, 315 F.3d 1283, 1290–1291 (10th Cir.2003) ("reasonable grounds existed for the agents to believe there was an immediate need to protect the public by entering the home and discontinuing the lab's production"); *United States v. Spinelli*, 848 F.2d 26, 30 (2d Cir.1988) (due to flammable and explosive nature of chemicals used to manufacture methamphetamine, officers were justified in violating knock and announce rule to enter residence alleged to contain methamphetamine lab).

It is irrelevant that no toxic chemicals or methamphetamine residue were ultimately found in the apartment or on the equipment. Sergeant Lilly had no way of ascertaining this at the moment of his initial

discovery and accordingly, his decision to seize the equipment should not be evaluated in light of this after-the-fact discovery.

## II. There was sufficient evidence to support Appellant's conviction for manufacturing methamphetamine.

Appellant next alleges that *Kotila v. Commonwealth,* 114 S.W.3d 226 (Ky.2003) required a directed verdict on the charge of manufacturing methamphetamine since Appellant did not possess all of the equipment necessary to manufacture methamphetamine. In *Kotila,* this Court held that a defendant cannot be convicted of manufacturing methamphetamine pursuant to KRS 218A.1432(1)(b) [1] unless he possesses either all the equipment or all the chemicals necessary for manufacture. *Id.* at 236. However, as noted by the Commonwealth, this interpretation of the statute was abrogated by *Matheney v. Commonwealth,* 191 S.W.3d 599 (Ky.2006), which interpreted KRS 218A.1432(1)(b) to require "that one must possess two or more chemicals or items of equipment with the intent to manufacture methamphetamine to fall within the statute." *Id.* at 604. Accordingly, Appellant's argument that he was entitled to a directed verdict pursuant to *Kotila, supra,* is without merit.

Citing *Hayes v. Commonwealth,* 175 S.W.3d 574 (Ky.2005), Appellant further claims that there was insufficient evidence to support a finding that he intended to manufacture methamphetamine. Specifically, he notes that no chemicals were found in the apartment, some of the equipment needed to be modified prior to manufacture, and the equipment was not found in his possession, but in his wife's possession.

■ First, the facts in *Hayes, supra,* are clearly distinguishable from the facts in this case. Unlike in *Hayes,* the evidence in this case was more than sufficient to support an inference that Appellant possessed the equipment found in his apartment. Mrs. Pate testified that Appellant actually lived in the apartment and his clothing and legal documents (e.g. social security card) were located in the apartment. When he was arrested, Appellant told police that the equipment they were seizing was his and that they were seizing it illegally. In light of this evidence, we reject Appellant's argument that he did not possess, constructively or otherwise, the equipment found in the apartment. *See Pate v. Commonwealth,* 134 S.W.3d 593, 598–99 (Ky.2004) ("To prove constructive possession, the Commonwealth must present evidence which establishes that the contraband was subject to the defendant's dominion and control.").

Second, the fact that no chemicals were found in the apartment is not dispositive. If it were, then the statute would not permit a finding of intent where only equipment is found in the possession of the defendant. *See* KRS 218A.1432(1)(b)("A person is guilty of manufacturing methamphetamine when he knowingly and unlawfully ... [w]ith intent to manufacture methamphetamine possesses two (2) or more chemicals or two (2) or more items of equipment for the manufacture of methamphetamine.")(Emphasis added).

■ In this case, Mrs. Pate testified that Appellant intended to use the equipment to manufacture methamphetamine. She explained that Appellant intended to modify the equipment to make it portable so that he could travel into the woods during the actual manufacturing process. Expert testimony further opined that the specialized modifications found on much of the equipment indicated that the

---

1. This statute has since been amended by the legislature.

equipment was intended to be used for the manufacture of methamphetamine. Finally, it was established at trial that Appellant had previously been found in possession of the chemicals and equipment necessary to manufacture methamphetamine. When all this evidence is coupled with Appellant's own statements to police, we find sufficient evidence to support the jury's finding that Appellant intended to manufacture methamphetamine. *See Anastasi v. Commonwealth,* 754 S.W.2d 860, 862 (Ky.1988) ("Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence.").

### III. Prior bad acts evidence was admissible.

■ In his next assignment of error, Appellant claims the trial court erred in admitting evidence regarding the fact that Appellant had previously been found in possession with chemicals and equipment necessary to manufacture methamphetamine.[2] Even if the evidence was relevant, Appellant claims it was excessive and that any probative value was outweighed by undue prejudice.

KRE 404(b) permits evidence of other bad acts for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In this case, the prior possession of equipment and chemicals necessary to manufacture methamphetamine was relevant to prove intent and knowledge regarding methamphetamine manufacture. Appellant concedes this evidence was relevant to prove these purposes, but argues that its probative value was outweighed by its prejudicial effect. *See* KRE 403. We disagree.

In this case, an officer testified that he stopped Appellant in Pendleton County with the following items in his possession: Sudafed, plastic spoons, plastic containers, lithium batteries, drain cleaner, salt, propane torch, tubing, and a tank of anhydrous ammonia. The officer stated that these items were necessary for manufacturing methamphetamine. Appellant claims this detail was excessive and unnecessary to prove intent since Mrs. Pate already testified that Appellant intended to manufacture methamphetamine.

Appellant's arguments are undermined by his claim at trial that the equipment found in the apartment was nothing more than common household items. He further disclaimed any knowledge or ownership of the items. Accordingly, it was necessary for the Commonwealth to establish Appellant's intent to use the items for illicit purposes and his corresponding knowledge of methamphetamine manufacture. When the circumstances are viewed in their totality, we do not believe the evidence was excessive; nor do we find any abuse of discretion in the trial court's finding that the probative value of the evidence was outweighed by its prejudicial effect. *Cook v. Commonwealth,* 129 S.W.3d 351, 361–362 (Ky.2004) ("The outcome of a KRE 403 balancing test is within the sound discretion of the trial judge, and that decision will only be overturned if there has been an abuse of discretion, i.e., if the trial judge's ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.").

### IV. Appellant was not entitled to assert marital privilege pursuant to KRE 504.

■ Appellant next alleges the trial court erred when it permitted Mrs. Pate to

---

**2.** Apparently, it was never mentioned that this encounter eventually led to Appellant being convicted of manufacturing methamphetamine. *See Pate, supra.*

testify against her husband. He argues that marital privilege prohibited her from testifying against his wishes. *See* KRE 504. The Commonwealth argued, and the trial court ruled, that the exception set forth in KRE 504(c)(1) permitted the testimony. For the reasons set forth herein, we agree.

KRE 504(c)(1) states that there is no marital privilege "[i]n any criminal proceeding in which sufficient evidence is introduced to support a finding that the spouses conspired or acted jointly in the commission of the crime charged." In this case, both Mrs. Pate and Appellant were indicted jointly for complicity to manufacture methamphetamine. Mrs. Pate agreed to plead guilty to facilitation in exchange for her testimony against Appellant. At trial, Mrs. Pate was well-versed about methamphetamine manufacturing in general, however, she denied entering into an agreement to manufacture methamphetamine with Appellant.

Appellant claims that Mrs. Pate's plea to facilitation in addition to her assertion that she did not enter into an agreement with Appellant to manufacture methamphetamine is determinative in proving that there was no conspiracy or joint action between the spouses. The Commonwealth notes that the equipment was found in the apartment shared by Mrs. Pate and Appellant, that Mrs. Pate was very knowledgeable about the equipment, its purpose, and what Appellant was doing with it, and that she was actively boiling metal fixtures on the stove when Trooper Lilly walked into the apartment. Moreover, the fact that Mrs. Pate pled to a lesser included offense could be utilized to infer the inverse of what Appellant is arguing—that Mrs. Pate pled to the lesser offense to avoid being convicted of the greater offense, i.e. conspiracy. When all this evidence is considered in its entirety, we agree with the Commonwealth that the evidence was sufficient to support a finding of joint action in the commission of the crime by the spouses. Neither the jury nor the judge was required to believe the whole of Mrs. Pate's testimony.

## V. Complicity instruction was proper.

Appellant next argues that the trial court erred by giving the jury an alternative instruction whereby they could find him guilty either of intending to manufacture methamphetamine or of complicity, citing *Parks v. Commonwealth*, 192 S.W.3d 318 (Ky.2006). He further claims that: 1) since Mrs. Pate denied entering into an agreement with Appellant to manufacture methamphetamine and pled guilty to facilitation; and 2) since no one else was charged with aiding him in his intent to manufacture methamphetamine, he should have been granted a directed verdict on the complicity charge. We find the instruction proper and the present case distinguishable from *Parks*.

*Parks* states that "to convict a defendant of guilt by complicity, the jury must find beyond a reasonable doubt that the offense was, in fact, committed by the person being aided or abetted by the defendant." *Id.* at 327. In *Parks*, we noted that the evidence showed the person the appellant allegedly aided and abetted could not have committed the underlying crime. Although Mrs. Pate's guilty plea to facilitation in the instant case did not conclusively establish that she actually committed the underlying offense of methamphetamine manufacturing, there was sufficient evidence at trial for the jury to find (1) that Mrs. Pate committed the offense and Pate acted in complicity with her or (2) that Pate acted as a principal in commission of the crime. Case law predating *Parks* holds that where evidence is sufficient to support a conviction as either

an accomplice or as a principal, an instruction in the alternative is proper. *Campbell v. Commonwealth*, 732 S.W.2d 878, 880 (Ky.1987).

The alternative instruction on complicity in *Parks, supra*, was not improper *solely* because some co-defendants in that case entered guilty pleas to facilitation. In fact, we did not consider in *Parks* whether there was sufficient evidence to conclude that Parks may have acted as an accomplice to Blakeman and Morris, the co-defendants who entered guilty pleas to facilitation. *See id.* at 326–27. Rather, we determined that there was no evidence to support a finding that Parks acted as an accomplice to Barnes in committing an underlying offense. *See id.* at 327. Since we noted that there was no evidence that Barnes ever possessed certain items, such as anhydrous ammonia and starting fluid, we found that Barnes could not have committed the offense of possessing these items with the intent to manufacture methamphetamine. Thus, since the evidence showed that Barnes could not have actually committed this underlying offense, there was no evidence to support a finding that Parks was guilty of complicity in aiding and abetting Barnes in such an offense. Given the lack of *any* evidence to support a finding of complicity, we held in *Parks* that alternative instructions on complicity and intent deprived Parks of his right to a unanimous verdict.

In contrast to the appellant in *Parks*, not only did Mrs. Pate enter a guilty plea to facilitation but evidence presented at trial could support a finding that she together with her husband actually committed the underlying offense. Sergeant Lilly testified to finding Mrs. Pate with a variety of equipment that he recognized as commonly used to manufacture methamphetamine, to hearing her admit to him that it was used to make methamphet-

amine, and to seeing metal fixtures boiling on the stove when Mrs. Pate allowed the officers into the apartment. Importantly, Mrs. Pate was the only person in the apartment when Sergeant Lilly arrived. Again, the jury was not required to believe her testimony that she did not make an agreement with Appellant to manufacture methamphetamine. The jury could reasonably have found that either Appellant acted in complicity with her or that Appellant was principally liable for intent to manufacture methamphetamine, especially given his statements to police that the seized equipment belonged to him. Thus, the trial court committed no error.

For the reasons set forth herein, the judgment and sentence of the Bracken Circuit Court is affirmed.

LAMBERT, C.J.; McANULTY, MINTON, NOBLE, and SCHRODER, JJ., concur.

CUNNINGHAM, J., concurs by separate opinion.

Concurring Opinion by Justice CUNNINGHAM.

I concur in the result but disagree with the majority's analysis of the validity of Mrs. Pate's consent. An inquiry into the issue of consent is unnecessary because here, unlike in *Bumper v. North Carolina*, Sergeant Lily possessed a valid arrest warrant at the time he entered the Pate home. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). A "reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *United*

*States v. Pruitt,* 458 F.3d 477, 482 (6th Cir.2006). Common sense alone provides an officer a sufficient basis to believe that a suspect might be present *in his own residence.* Furthermore, when Mrs. Pate made the bare assertion that Appellant was not home, Officer Lilly expressed his desire to check the apartment "himself", thus evidencing his belief that Appellant might be present. Absent some indication on the record that Officer Lilly had reason to believe that Appellant was *not* present, other than Mrs. Pate's assertion, the arrest warrant provided sufficient authority to enter the home. Moreover, the scope of Officer Lilly's search did not exceed that permitted to effectuate an in-home arrest pursuant to a valid arrest warrant. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).