NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0075n.06

No. 22-5879

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 22, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| JOSEPH ROACH, | ) |
| Petitioner-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE WESTERN |
| | ) DISTRICT OF KENTUCKY |
| AMY ROBEY, Warden, | ) |
| Respondent-Appellee. | ) OPINION |
| | ) |
| | ) |

Before: SILER, MATHIS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Joseph Roach was convicted of murder in Louisville, Kentucky and sentenced to life imprisonment. The jury instructions allowed him to be convicted on a theory that he was guilty of murder either as the principal or as an accomplice. Roach argues this combination instruction denied him a unanimous verdict under the Kentucky Constitution, and his counsel on direct appeal was therefore ineffective for not challenging his conviction on that ground. The district court denied Roach habeas relief as to this and other claims. We granted him a certificate of appealability on the ineffective assistance of appellate counsel claim. Because Roach has not shown the combination jury instruction was erroneous, his ineffectiveness claim fails, and we affirm the district court's denial of Roach's petition for habeas relief.

**BACKGROUND**

On Friday, January 18, 2002, officers from the Louisville, Kentucky police department responded to a call about a murder in an apartment unit. Inside the apartment, Renee Robinson's dead body lay on her bed; she was bloody and beaten with her pants pulled around her ankles.

She had been "choked" and "severely beaten about the head with what was believed to be a golf club." Ky. S. Ct. Order, R. 10-3, PageID 383. The floor, walls, and furniture in her apartment were covered with blood, and her belongings had been ransacked. There was a bloody golf club next to the door and a crack pipe sitting on top of the microwave in the kitchen. The living room TV showed static; the VCR that was attached to it had been ripped out and carried away, along with a handful of VHS tapes.

After a short investigation, police arrested Joseph Roach and his cousin John Drake and charged them with Robinson's murder, rape, and robbery. Drake had Robinson's VCR in his house, and Roach had some of her tapes. In exchange for his testimony against Roach, Drake pled guilty to facilitation to murder and facilitation to robbery and agreed to a sentence of fifteen years' imprisonment.

Roach proceeded to trial. The jury heard testimony from the detective who interviewed Roach after his arrest.[1] Roach told him that on the evening of January 17, 2002, he and Drake were drinking together near Robinson's apartment. They knew Robinson was looking for "dope" and had money on her to purchase it. Trial Recording, R. 67, Nov. 24, 2004 at 10:02–10:29. Roach told the detective that both he and Drake wanted to "holler at" Robinson. *Id*. Eventually, the three of them went to drink together in Robinson's apartment. Robinson wanted to exchange sexual favors with Roach for crack. So, said Roach, he and Robinson went into her bedroom and "hugged on each other." *Id*. After some time had passed, Roach noticed Drake had left Robinson's apartment. Ten minutes later, after he and Robinson "messed around," Roach left the apartment.

---

[1] Roach chose not to testify in his own defense, and the trial court permitted the interviewing officer to testify about portions of Roach's Mirandized statement.

*Id*. Roach did not admit that he was in Robinson's apartment when she was injured or deceased, or that he tried to clean up the apartment.

Drake's testimony at trial contradicted the story Roach told the detective. Drake said that Roach saw Robinson and had the idea to give her drugs in return for sex. The three of them went to the apartment and drank together. Then, Roach and Robinson started to smoke crack together. Robinson agreed to have sex with at least Roach in exchange for more crack. Eventually, Robinson asked Drake to leave the apartment for about forty-five minutes because she "wanted to do the sex thing one at a time." Trial Recording, Nov. 29, 2004 at 10:56–11:16. Drake said he then fell asleep drunk in his car. Some time later, Roach woke him up, threw something in the back of Drake's car, and told him to come back to the apartment. When he walked in, Drake saw the apartment covered in blood, and Robinson on the ground with two wounds on her face. Drake said Robinson was still alive, breathing shallowly, when he saw her. Roach asked Drake to help him clean up the apartment, but Drake left because he was scared. He started his car to leave, but had to wait to drive away because of a problem with the car's transmission. As Drake waited for his car to get into gear, Roach came back to the car. Drake further testified that Roach told him he "fucked up" and not to tell anyone about what he had seen. *Id*. Drake said he did not call the police because he forgot the number. Drake said Roach told him to drive to different locations so he could dispose of evidence, but that Roach had left Robinson's VCR in his car, so Drake brought it into the house where he was staying.

As for physical evidence, there was no DNA from Roach or Drake at the crime scene. An expert testified that samples of blood taken from a rug, a wall, a pair of long underwear, and the base of the toilet in the apartment were "consistent" with genetic markers present in Robinson's

and Drake's blood, but not Roach's. Trial Recording, Nov. 23, 2004, 14:12–14:15, 14:21 (rug), 14:24–14:27 (base of toilet), 14:30 (long underwear), 14:30–32 (wall).

At the conclusion of the trial, the court gave the jury these instructions on the murder charge:

> You will find the defendant, JOSEPH W. ROACH, guilty of Murder, under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
>
>> A. That in this county on or about January 18, 2002, <u>acting alone or in complicity with another</u>, he killed Renee Robinson by beating her with a blunt object and/or strangling her;
>
>> AND
>
>> B. That in so doing;
>
>>> (1) He caused the death of Renee Robinson intentionally.
>
>> OR
>
>>> (2) He was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Renee Robinson under circumstances manifesting extreme indifference to human life.

Jury Instructions, R. 29-2, PageID 854 (emphasis added). The court provided the following definition of "complicity":

> A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense.

Jury Instruction Definitions, R. 29-3, PageID 855.

Roach's trial counsel objected to the complicity instruction. The trial court permitted the instruction, concluding that if a reasonable jury believed Drake's testimony that he saw Roach cleaning up the crime scene after Robinson had been killed, it could believe that either Roach "or

someone else" committed the murder. Trial Recording, R. 67, Dec. 1, 2004 at 09:57–10:05. The jury found Roach guilty of murder, and he was sentenced to life imprisonment.

The Kentucky courts affirmed Roach's conviction on direct appeal and on postconviction review. Roach then petitioned for habeas relief in the United States District Court for the Western District of Kentucky under 28 U.S.C. § 2254, raising a number of constitutional claims. The district court denied Roach's petition in full and declined to issue a certificate of appealability. We granted his application for a certificate of appealability on one issue: whether Roach's counsel on direct appeal was ineffective because he failed to argue that the combination principal-complicity jury instruction led to the denial of Roach's right to a unanimous jury verdict under the Kentucky Constitution.

## DISCUSSION

We review the district court's denial of Roach's habeas petition de novo, accepting the district court's factual findings unless they are clearly erroneous.[2] *Daniel v. Burton*, 919 F.3d 976, 978 (6th Cir. 2019). To show his appellate counsel was ineffective for failing to raise an issue on direct appeal, Roach must show that it was "objectively unreasonable" for counsel not to raise the issue, and that if counsel had raised the issue, there is a "reasonable probability" Roach would

---

[2] Kentucky agrees that the deferential standard of 28 U.S.C. § 2254(d) does not apply in this case because the Kentucky Court of Appeals denied Roach's appellate ineffectiveness claim as untimely rather than on the merits. *See Maslonka v. Hoffner*, 900 F.3d 269, 277–78 (6th Cir. 2018). Such a denial would normally be a procedural default, and Roach would need to persuade us to excuse it. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But, as the district court properly concluded, he need not here. Kentucky courts did not recognize appellate ineffectiveness claims during the three years in which Roach could have timely brought one. *Pollini v. Robey*, 981 F.3d 486, 491 (6th Cir. 2020) (citing *Hollon v. Commonwealth*, 334 S.W.3d 431, 436 (Ky. 2010)). Kentucky's choice not to recognize these claims means it "voluntarily forwent the opportunity" to hear them on the merits; we may therefore consider the merits now. *Id*. at 499. The warden also forfeited the procedural default argument on appeal by not raising it in her briefing. *See Maslonka*, 900 F.3d at 276.

have prevailed on appeal. *Mammone v. Jenkins*, 49 F.4th 1026, 1060 (6th Cir. 2022); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000). These two requirements correspond to the familiar "deficient performance" and "prejudice" prongs of the ineffective assistance of trial counsel test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *Robbins*, 528 U.S. at 285–86 (citing *Strickland*, 466 U.S. at 687–91, 694).[3] Roach argues that his counsel on direct appeal should have argued that he was denied his right to a unanimous jury verdict in violation of the Kentucky Constitution because the judge gave the jury the combination principal-accomplice murder instruction. *See* Ky. Const. § 7; *see also Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky. 1978).

Under Kentucky law, a jury instruction may include two mutually exclusive theories of a case so long as "either theory . . . is reasonably supported by the evidence." *Beaumont v. Commonwealth*, 295 S.W.3d 60, 72 (Ky. 2009) (quotation omitted). The jurors don't have to agree on one theory—the verdict is still unanimous if sufficient evidence supports a guilty verdict under either the principal interpretation or the accomplice interpretation. *See Wells*, 561 S.W.2d at 87.

Roach does not dispute that sufficient evidence supported the principal interpretation. Indeed, it was the prosecutor's theory of the case. Accordingly, we must assess if sufficient evidence supported the complicity instruction. For Roach to be guilty under the accomplice theory, the Commonwealth had to prove (1) Roach intended to promote or facilitate the murder; (2) another person committed the murder; and (3) Roach "participated in that offense." *Harper v. Commonwealth*, 43 S.W.3d 261, 265 (Ky. 2001). Roach's appeal primarily concerns the evidence

---

[3] The warden is incorrect that *Brown v. Davenport* requires us to apply an extra measure of deference to the state-court verdict. 596 U.S. 118, 126, 134 (2022). Because § 2254(d) deference does not apply here, the prejudice prong of Roach's ineffectiveness claim does the work of the equitable deference discussed in *Davenport*. *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

introduced at trial to support the second prong.[4] Specifically, he maintains that his appellate counsel should have argued that there was no evidence in the record from which a jury could find that Drake murdered Robinson and Roach was guilty as his accomplice. We disagree.

The jury heard enough at trial to support Roach's murder conviction on the theory that Drake was the principal and Roach was the accomplice. In our review of the evidence presented, we draw "all fair and reasonable inferences" in the warden's favor, *Beaumont*, 295 S.W.3d at 68, with the understanding that a jury may "believe and disbelieve particular portions" of witness testimony, *Morton v. Commonwealth*, 817 S.W.2d 218, 223 (Ky. 1991). No evidence directly identified the person who murdered Robinson, so the jury had to infer the murderer's identity from circumstantial evidence. And a jury instruction is proper so long as the inferences required to support liability under that instruction are reasonable. *Luna v. Commonwealth*, 460 S.W.3d 851, 889 (Ky. 2015).

Four pieces of evidence provide the basis on which the court properly gave the combination principal-complicity instruction. *First*, Drake testified that he was present in the apartment before Robinson was murdered and as she was near death. As the warden points out, from this testimony a jury could infer Drake had a motive to kill Robinson—if she had lived, she could identify him

---

[4] Roach also suggests there is insufficient evidence on the first prong. But by declining to dispute that sufficient evidence supported the principal instruction, Roach also declines to dispute that there was sufficient circumstantial evidence to show he intended for and caused Robinson to be killed. The same intent and participation aspects that support Roach's principal liability also support his accomplice liability. Roach argues that there is still a gap in the theory of accomplice liability: that there was insufficient evidence that he intended for *Drake* to murder Robinson, citing *Parks v. Commonwealth*, 192 S.W.3d 318, 327 (Ky. 2006). *Parks*, however, forbids a complicity instruction when the evidence shows the person alleged to be principal "could not have committed the underlying crime." *Pate v. Commonwealth*, 243 S.W.3d 327, 334–35 (Ky. 2007) (citing *Parks*, 192 S.W.3d at 327). That means the complicity instruction was proper so long as the jury also heard evidence which "could support a finding" that Drake "actually committed the underlying offense." *Id*. at 335.

as having been involved in a drug-fueled assault. *Second*, Drake also testified that he helped Roach dispose of items taken from Robinson's apartment after she was killed. It is reasonable to infer Drake did so to dispose of evidence showing he murdered Robinson. *Third*, blood samples from some items in the apartment were consistent with samples from Drake and Robinson, but not Roach. *Fourth*, Roach wrote a note to Drake indicating that he told the police that Drake had committed the murder. Given that no direct evidence at trial identified the person who killed Robinson, a jury could conclude from these facts that Drake murdered her, and Roach was guilty as an accomplice.

The supporting circumstantial evidence here is similar to supporting evidence in other Kentucky complicity cases. In one, the defendants were present at the victim's home when she was killed and personal property was stolen from her home. *Caudill v. Commonwealth*, 120 S.W.3d 635, 648 (Ky. 2003). In another, the defendant drove the victim to the scene of the murder and participated in an armed robbery there. *Harper*, 43 S.W.3d at 265–66. Drake also accompanied Robinson to the scene of her murder and received the proceeds from her robbery. Accordingly, Kentucky law supported a complicity instruction.

True, the Commonwealth's theory was that Roach acted alone as the principal. The theory rested on Drake's testimony that he was not in the apartment when Robinson died. But the jury could disbelieve certain aspects of Drake's testimony to conclude that he was the one who killed Robinson, with Roach acting as his accomplice. *See Pate v. Commonwealth*, 243 S.W.3d 327, 335 (Ky. 2007) (explaining that "the jury was not required to believe" testimony indicating the defendant acted alone when other evidence implied the defendant acted together with his wife). Only Drake's testimony removed him from the apartment at the time of Robinson's death, and Roach's trial counsel impeached Drake's credibility. Trial counsel emphasized that Drake was

inconsistent about whether Roach asked him to clean up the bloody apartment. Counsel also suggested Drake lied when he insisted he forgot the phone number for 911 and claimed he couldn't immediately leave Robinson's apartment because he suddenly had car trouble. And trial counsel emphasized that Drake pled guilty to facilitation to murder and facilitation to robbery so that he only had to spend 15 years in prison even though he said he knew nothing about the murder and did not participate in it at all. Based on the totality of the evidence, the jury could have reasonably concluded that Drake and Roach were both guilty of murder, even if it didn't share the Commonwealth's view on who was the principal and who was the accomplice. *See Holbrook v. Commonwealth*, 525 S.W.3d 73, 77, 87 (Ky. 2017) (concluding that a complicity instruction did not deny a unanimous verdict when evidence suggested a defendant involved in a murder "might not have been solely responsible").

Roach must show *no* reasonable juror could conclude that he acted as an accomplice to Robinson's murder. The evidence at trial does not support that conclusion. Since there is no "reasonable probability" the argument would have succeeded on direct appeal, Roach has failed to show that his appellate counsel's decision not to press the issue prejudiced him. *Mammone*, 49 F.4th at 1060. He is therefore not entitled to habeas relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.