# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 29, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2019-SC-0489-MR

CLIFFORD ANTHONY VICK                                                    APPELLANT

ON APPEAL FROM MUHLENBERG CIRCUIT COURT
v.                              HONORABLE BRIAN WIGGINS, JUDGE
NO. 19-CR-00059

COMMONWEALTH OF KENTUCKY                                                  APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

A Muhlenberg County jury found Clifford Vick guilty of trafficking in a controlled substance (methamphetamine) in the first degree, possession of drug paraphernalia, and being a persistent felony offender in the first degree (PFO I). The circuit court sentenced Vick to twenty years in prison. Vick raises three claims of error on appeal. He claims the trial court erred by denying him a trial continuance, by denying his invocation of the spousal privilege, and by allowing the jurors to take cell phones into the jury room during deliberations. Upon review, we affirm the Muhlenberg Circuit Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mid-February 2019, two detectives with the Pennyrile Narcotics Task Force received a tip that Clifford Vick was selling drugs out of a motel in Central City, Kentucky. The next day, initiating surveillance of the motel, Detective Gibson was in the motel office and Detective Shoemaker was in the

parking lot in an unmarked car when Vick left his motel room. Detective Gibson, alerted of Vick's movement toward the office by Detective Shoemaker, watched Vick walk to the brush line between the motel and an adjoining business and stop there. Detective Gibson turned away from him in an effort to remain undetected. After Vick returned to his room, the detectives decided to meet at a convenience store up the street from the motel. On the way, Detective Gibson inspected the brush line where Vick had stopped and retrieved a knotted yellow Dollar General bag that did not appear to have been outdoors long. Detective Gibson opened the bag once he was back in the car. The bag contained methamphetamine placed in a pink cell phone charger case; digital scales enclosed in a zipped case; green marijuana in a Gerber baby food jar; and napkins.

In an effort to continue surveillance, the detectives got duplicate bags from the nearby Dollar General to replace the bag they had ripped open. On their way back to the motel, but before they were able to place a bag in the brush line, the detectives observed Vick walking up the street. Vick was already past the brush line, so they decided to detain him. Vick was messaging on his mobile phone until then. Nothing was found on Vick when he was detained other than his cell phone.

Vick informed the detectives that his wife, Amber, was in the motel room. The detectives went to the motel and Amber consented to a search of the room. She gave the detectives a glass methamphetamine pipe and "roaches," the tips remaining from smoked marijuana cigarettes; the roaches were in a Gerber

2

baby food jar just like the jar in the Dollar General bag containing the marijuana. The detectives also found napkins in the bathroom which matched those found in the Dollar General bag. Amber identified the items in the Dollar General bag and she spoke with the detectives about Vick.

After Vick was arrested, the detectives obtained a search warrant for the contents of Vick's cell phone, which contained text messages referring to drug trafficking. Some of the messages included Vick's name or nickname, and Amber identified herself in some transaction-related messages. Amber was not charged with any crimes relating to this case.

Vick was charged with trafficking in a controlled substance in the first degree, possession of drug paraphernalia, possession of marijuana and PFO I.[1] The marijuana possession charge was dismissed without prejudice. A jury found Vick guilty of the remaining charges, and after finding Vick guilty of PFO I, recommended twenty years in prison on the trafficking offense.[2] The trial court followed that recommendation and sentenced Vick accordingly.

Vick argues on appeal that the trial court erred by (1) failing to grant him a continuance; (2) denying his request to invoke the spousal privilege; and (3) allowing jurors to take cell phones into the jury room during deliberations. Additional facts are presented below as necessary.

---

[1] He was also charged with failure to comply with sex offender registration, but that offense was severed from the trial on the drug charges and later dismissed without prejudice.

[2] The parties agreed to a six-month sentence for the paraphernalia offense.

3

## I. The Trial Court Did Not Err by Denying Vick's Motion for a Continuance

Vick was arraigned on March 18, 2019. At that time, he told the trial court that he had not made any effort to hire an attorney and could not afford one. He stated that he had relied upon his mother to bail him out of jail following his arrest.[3] The trial court appointed the public defender to represent Vick. Vick was released from jail again on April 1, 2019 after his mother paid the $2,500 bond set at arraignment. At the April 15, 2019 pretrial conference and by order entered April 19, 2019, the court scheduled Vick's trial for July 2, 2019. An agreed order, tendered on April 22, 2019 and entered April 23, 2019, moved the trial up to June 20, 2019. The change in trial date was necessary because a witness for the Commonwealth was not available on the July date.

On the morning of trial, Vick moved the trial court for a continuance to permit him time to secure private counsel. Vick testified at the hearing on his motion that the prior afternoon he had contacted private attorneys to represent him. He identified five attorneys he sought to hire and provided further detail on his lack of success in hiring other counsel. Vick explained that he was unable to speak with one attorney and that he did not have the extra $1,000 beyond the $2,500 bond money on hand to pay another attorney's retainer fee. Vick stated his mother was attempting to secure the funds for him and

---

[3] Vick's bond was initially set at $500. At arraignment, his bond was raised to $2,500 and he was remanded to custody.

although he did not know how long it would take her to obtain the loan she was seeking, he did not think it would be more than a few days. Vick testified one attorney was willing to represent him but had other commitments and could not appear on his behalf the morning of trial. He also testified that he contacted his appointed counsel ten days prior to trial and informed that attorney that his services were no longer needed because Vick was looking for another attorney. When presenting Vick's motion, appointed counsel stated that Vick sought private counsel because Vick believed appointed counsel had not had adequate time to pursue the case as it should have been handled. He represented that Vick thought that with the money he was raising he could have private counsel relatively soon. Vick's appointed counsel did not himself suggest that he was insufficiently prepared and subsequently announced that he was ready for trial. Vick acknowledged that in relation to his other prior cases before the same court, he had also sought a continuance on the eve of trial of his last case. The Commonwealth opposed the continuance.

The trial court denied the motion for continuance, explaining first that although Vick's right to counsel of his own choosing was a factor to be considered, the right was not unlimited. The court considered that Vick had not retained counsel and moved for a continuance within the weeks leading up to trial, nor was counsel retained as of the trial date and able to represent him. Additionally, three days before trial Vick and his public defender appeared for a suppression hearing. At that time, neither of them indicated to the trial court that Vick wanted to hire private counsel. The trial court observed that

according to Vick's testimony, Vick had not aggressively exercised the right to hire counsel, waiting until the day before trial to make an effort to do so. When Vick interjected that the reason he had not hired counsel beforehand was because he did not have the money, the trial court acknowledged that circumstance had not changed. The circuit court also considered the inconvenience to the court, the Commonwealth, and the jurors (who were in the courthouse waiting) in delaying the trial.

Kentucky Rule of Criminal Procedure (RCR) 9.04 allows a trial to be postponed upon a showing of sufficient cause. *Snodgrass v. Commonwealth*, 814 S.W.2d 579 (Ky. 1991),[4] provides the factors that the trial judge considers when deciding the motion. In that case, this Court explained:

> The decision to delay trial rests solely within the court's discretion. Whether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case. Factors the trial court is to consider in exercising its discretion are: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.

*Id.* at 581 (internal citations omitted).

Vick argues that an analysis of these factors weighs in his favor, and yet in this case the trial court did not expressly consider all of the factors. He contends that the competing rights and interests relevant to some factors were not considered on the record with enough detail to support the trial court's

---

[4] *Overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001).

denial of the continuance. He also contrasts his case to other cases, beginning with *Snodgrass,* in which this Court upheld the trial court's denial of a continuance.

In *Snodgrass,* the defendant was found guilty of three charges of sodomy and four other acts of sexual misconduct involving four young boys after a two-day trial. *Id.* at 579. The time between Snodgrass's arraignment and trial was one year. *Id.* at 580. Snodgrass, like Vick, had appointed counsel because he could not afford to pay private counsel and waited until the morning of trial to ask for a continuance. *Id.* Snodgrass wanted to replace his appointed attorney with private counsel because he felt that public defenders are overworked and that his appointed lawyer was not prepared for trial. *Id.* The trial court denied the motion. *Id.*

Snodgrass, released from jail on his own recognizance, talked with a private attorney shortly after arraignment about employing him but could not afford to do so. Snodgrass met with his attorney at least five times before trial. Three days prior to trial at a competency hearing, Snodgrass did not mention a need for a continuance and in response to the trial court's question, indicated he could sufficiently communicate with his attorney so that his defense would be prepared. Snodgrass telephoned the private attorney again the day before trial; while Snodgrass maintained that he could afford the attorney, the attorney reported to the Commonwealth's Attorney that Snodgrass did not have the money to retain him. *Id.* at 580.

The morning of trial, defense counsel identified parts of trial preparation not yet done including that he had not viewed a six-hour video of the alleged victims' interviews, although he also stated that the Commonwealth had described the interviews to him. Also, Snodgrass had not contacted a potential witness and was not sure she had been subpoenaed. *Id.* at 580-81. Defense counsel affirmed Snodgrass's defense was denial of the crimes. *Id.* at 581.

A majority of the Court determined under all the circumstances that the trial court had not abused its discretion in denying the continuance; those facts included four previous continuances by agreement of counsel and Snodgrass's weak representation that he could afford the private attorney, when in fact that attorney had indicated otherwise to the Commonwealth. Upon review of the trial, the Court concluded defense counsel effectively and competently represented Snodgrass. *Id.*

Vick believes his case is distinguishable from *Snodgrass* because Snodgrass had been granted previous continuances and his trial date was one year after Snodgrass's arraignment, whereas Vick had not previously moved for a continuance and his trial date was three months after arraignment. Also, Vick notes the private counsel Snodgrass sought to employ indicated to the Commonwealth that Snodgrass was unable to pay his retainer fee, but that was not the case with the attorney who could not make an appearance and represent Vick on the first day of trial because of other obligations. While these circumstances, as described by Vick appear to weigh in his favor, only the first differentiation has any merit. The number of previous continuances is

8

important, but it must be considered in the context of the case. Vick's case was not complex and nothing in the record suggested that defense counsel required more than three months to prepare Vick's defense. Although Vick complained to the trial court during the hearing that he had not subpoenaed his witnesses for trial, Vick failed to show who the witnesses would have been or how they would have testified on his behalf. The complexity of the case and identifiable prejudice resulting from a denial of the continuance did not weigh in favor of a continuance.

In regard to the length of delay, Vick claims that the continuance hearing did not produce evidence key to analyzing that factor, such as the length of time needed for Vick to obtain new counsel and for new counsel to be ready for trial. In support of this argument, Vick cites *United States v. Sellers*, 645 F.3d 830, 837 (7th Cir. 2011), a case in which the Seventh Circuit Court of Appeals held the trial court did not properly consider the factors weighing for and against the requested continuance and noted the district court failed to ask either prior or new counsel how long substitute counsel would need to prepare adequately for trial. Here, Vick identifies the trial court's failure to ask relevant delay-related questions as the reason information required for a proper balancing of the factors is lacking. However, the circumstances in *Sellers* are vastly different from Vick's case.

In *Sellers*, the defendant, while represented by a lawyer he never chose, retained new counsel and both attorneys appeared before the trial court on the first day of trial. *Id.* at 832-34. Addressing the district court's failure to make

9

relevant inquiries in order to perform the balancing analysis, the Seventh Circuit distinguished *Sellers* from *United States v. Carrera,* 259 F.3d 818 (7th Cir. 2001), a case in which a proposed new attorney never actually appeared to move for a continuance and the district court could not engage in the exact type of balancing that is essential before deciding whether a continuance is warranted. 645 F.3d at 839. We are not persuaded that the trial court failed in any responsibility to gather information from Vick pertinent to his continuance request so that the balancing of the factors relevant to a continuance could occur. Rather, the burden was upon Vick to ensure private counsel was before the trial court so questions about the length of any delay could be answered.

Vick further contends that *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006), renders the "availability of other competent counsel" factor of limited value. He views *Gonzalez-Lopez* as supporting the grant of a continuance to allow private counsel to enter an appearance, apparently because *Gonzalez-Lopez* clarified that a defendant did not need to show prejudice if the defendant is wrongly prevented from being represented by the counsel of his choice. We do not agree with Vick's extension of *Gonzalez-Lopez.*

In *Gonzalez-Lopez*, the defendant hired an attorney, but the trial court refused to grant that attorney's applications for admission *pro hac vice. Id.* at 142-43. Gonzalez-Lopez then hired another attorney and at trial was found guilty of conspiracy to distribute more than 100 kilograms of marijuana. *Id.* The Eighth Circuit Court of Appeals vacated Gonzalez-Lopez's conviction,

10

finding that the district court's denials of the attorney's *pro hac vice* motions were erroneous and violated Gonzalez-Lopez's Sixth Amendment right to pay for counsel of his choosing. *Id.* at 143-44. The Government did not dispute the Eighth Circuit's conclusion that the district court erroneously deprived the defendant of his counsel of choice. *Id.* at 144. The question before the United States Supreme Court was whether a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction. *Id.* at 142. The Government contended that the defendant was required to show he was prejudiced by not having counsel of his choice before the conviction could be reversed. *Id.* at 144. The Supreme Court, however, held that the erroneous deprivation of the right to counsel of choice qualifies as structural error. *Id.* at 150.

The Supreme Court further explained that its *Gonzalez-Lopez* decision did not cast any doubt or place any qualification upon its previous holdings that limit the right to counsel of choice. *Id.* at 151. Recognizing that a trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar, it stated: "This is not a case about a court's power . . . to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id.* at 152. In short, *Gonzalez-Lopez* does not contain analysis impacting the "availability of competent counsel" factor.

Vick, apparently based on the same premise, believes that *Shegog v. Commonwealth,* 142 S.W.3d 101 (Ky. 2004), published prior to *Gonzalez-Lopez,*

11

can no longer be viewed as authority which would support the trial court's denial of Vick's trial continuance, but he nonetheless distinguishes his case from *Shegog*. *Shegog* upheld the trial court's order placing time constraints on Shegog's hiring of private counsel and considered that constraint proper in light of the fact that Shegog's "claim that his family was going to retain private counsel was, as best, speculative." *Id.* at 106.

In *Shegog*, the defendant disliked his two court-appointed attorneys and filed bar complaints against both of them. *Id.* at 104. Five days before trial, Shegog filed a pro se motion for a continuance to hire private counsel. *Id.* Along with the complaints about his appointed counsel, Shegog "indicated on the record that when his wife is released from jail, she will hire him a private attorney. He further stated that her mother has had the money to do so all along but has been too busy to do so." *Id.* at 104–05. The trial court entered an order stating: "In view of all the above, unless private counsel enters an appearance for the Defendant prior to the scheduled trial date (at which time an actual attorney with their available schedule would be present), this matter will proceed to trial as scheduled." *Id.* at 105. This Court held that Shegog was not deprived of the right to secure private counsel of his own choosing; the trial court merely ruled that such counsel, if obtained, was required to enter an appearance prior to the scheduled trial date. *Id.* Vick argues that unlike in *Shegog*, his ability to secure private counsel was not speculative as he had learned one attorney would be willing to represent him.

12

We are not persuaded by Vick's argument. The trial court was able to discern that Vick's ability to obtain new counsel was only speculative. The private attorney Vick described as willing to represent him did not provide any notice to the trial court of her willingness to do so, either with or without pay. Despite Vick's argument that the facts do not support the trial court's conclusion that Vick did not have the money to hire an attorney, the trial court could reasonably draw that conclusion as Vick indicated various times that he was relying on his mother to secure a loan in order to have the funds needed to pay a private attorney. The lack of information related to the length of delay and the availability of other competent counsel weigh against Vick.

Citing *Eldred v. Commonwealth*, 906 S.W.2d 694, 700 (Ky. 1994),[5] Vick further argues this Court has previously observed that in relation to the inconvenience caused by the continuance, "any change in trial date is going to cause some inconvenience. Thus, in order to become a factor for consideration there must be some significant or substantial inconvenience." In *Eldred*, this Court explained that inconvenience must be judged in the context of the case. This Court began its analysis of the *Snodgrass* factors noting that the defendant was seeking his first continuance–a 60-day continuance–in the context of a capital case, with the death penalty possible, which made the case qualitatively different. *Id.* Although Vick views the inconvenience to the court,

---

[5] *Overruled on other grounds by Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003).

opposing party and the jurors who had been sitting in the courtroom waiting to hear his case as being minimal, that inconvenience, when coupled with the fact that Vick did not provide a definite, viable reason for a delay, or identify how he would be prejudiced if the continuance was not granted provided sufficient grounds for the trial court's ruling. We cannot conclude that the trial court abused its discretion in finding that Vick did not show sufficient cause for a continuance of the trial.

Finally, Vick argues that the trial court erred by failing to consider on the morning of trial whether Vick had a continuing right to the benefit of the Department of Public Advocacy's representation. He insists that if the court had addressed that issue, Vick would have been entitled to a continuance in order to allow retained counsel to represent him. He argues that because the trial court had evidence of privately retained counsel entering an appearance, it did not fulfill its duty under Kentucky Revised Statute (KRS) 31.120(1) to determine at "each step in the proceedings, whether [a defendant] is a needy person" under KRS 31.100(5)(a) and "unable to provide for the payment of an attorney and all other necessary expenses of representation." We find this argument without merit.

KRS 31.120(2) provides that "[i]n determining whether a person is a needy person . . . the court concerned shall consider such factors as: (a) Income; . . . (l) Payment of money bail, . . . whether deposited by the person or another . . .; and (m) Any other circumstances presented to the court relevant to financial status." Furthermore, RCr 3.05(2) provides:

14

If the defendant demonstrates that he or she is a needy person as defined in KRS 31.120 and the court so concludes, then the appointment shall continue for all future stages of the criminal proceeding, including appeal. Such appointment may be terminated by the court in which the proceeding is pending at any time upon a showing that defendant is able to employ counsel.

As discussed above, Vick's hiring of private counsel was only speculative and if it were to happen, Vick was dependent upon his mother securing a loan to obtain money to pay the attorney. These circumstances do not lend themselves to a finding by the trial court that Vick was no longer needy and able to employ counsel. The trial court did not err by not addressing whether Vick continued to qualify for representation by appointed counsel, nor by denying Vick's motion for a continuance.

## II. The Trial Court Did Not Err by Allowing Vick's Wife to Testify

When the Commonwealth called Amber Vick as a witness the morning of trial, Vick invoked his spousal privilege to keep his wife from testifying against him.[6] Defense counsel emphasized that Amber had never been charged as a codefendant for any crimes charged against Vick, a factor potentially relevant to application of the privilege. The Commonwealth argued the evidence was admissible under the spousal privilege exception stated in Kentucky Rule of Evidence (KRE) 504(c)(1), which provides "[t]here is no privilege under this rule . . . in any criminal proceeding in which the court determines that the spouses conspired or acted jointly in the commission of the crime charged." The

---

[6] Defense counsel began by explaining Amber wanted to invoke her privilege to not testify against her husband. Amber then testified that she did not want to testify against her husband.

15

Commonwealth noted that the rule does not require that the testifying spouse be charged with a crime. The circuit court, having previously made the finding at Vick's suppression hearing that Amber acted jointly with Vick in the trafficking of controlled substances at the motel, ruled in the Commonwealth's favor and allowed the evidence.

On appeal, along with arguing that Amber was never charged as Vick's codefendant, Vick argues that neither the evidence at the suppression hearing nor at trial supported the finding that Amber and Vick conspired or acted jointly in the commission of the crimes charged against Vick, and therefore the KRE 504(c)(1) exception did not apply. The parties disagree as to whether Vick's claim is preserved. The Commonwealth points out that Vick's argument during trial in support of his motion was limited to Amber not being charged as a codefendant, but on appeal, Vick challenges the circuit court's KRE 504(c)(1) pretrial finding regarding the couple conspiring or acting jointly as to the trafficking at the motel–a finding Vick did not object to during the evidentiary hearing.

KRE 104(a) provides that the trial court, applying the rules of evidence, shall determine preliminary questions concerning the existence of a privilege. KRE 104(b) states that a hearing on this preliminary question shall be conducted when the interests of justice require. While Vick could have moved *in limine* to exclude his wife's testimony, KRE 103(d), he waited until trial to make his motion once the Commonwealth called her as a witness, a timely objection under KRE 103(a)(1). He essentially asked the trial court to

reconsider its prior ruling based upon the fact that Amber had not been charged or convicted of a crime as Vick's codefendant. We note that the trial court is not precluded under KRE 103 from reconsidering at trial any ruling made on a motion *in limine.* KRE 103(d). Finding the issue preserved, we consider whether the trial court abused its discretion in admitting Amber's testimony. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky. 2000). That decision rests on whether the preponderance of the evidence supported the trial court's finding that Amber conspired or acted jointly with Vick in the commission of the trafficking charge. *See Stidham v. Clark,* 74 S.W.3d 719, 727 (Ky. 2002).[7]

Detective Shoemaker and Detective Gibson testified at the suppression hearing. Vick's basis for suppressing evidence was Amber's lack of consent to search the motel room. During that hearing the Commonwealth elicited testimony particularly from Detective Gibson about the text messages found on Vick's cell phone after a search warrant for the phone was obtained. Detective Gibson testified that in addition to texts incriminating Vick in the sale and purchase of illegal drugs, one or more texts were found identifying Amber as the sender of "drug talk" messages revealing her participation in the trafficking. In its argument to the court at the suppression hearing, the Commonwealth

---

[7] *Pate v. Commonwealth,* 243 S.W.3d 327 (Ky. 2007), applied a different standard based upon the then-plain language of KRE 504(c)(1). KRE 504(c)(1) stated that there is no marital privilege "[i]n any criminal proceeding in which *sufficient evidence is introduced to support a finding* that the spouses conspired or acted jointly in the commission of the crime charged." *Id.* at 334 (emphasis added). Current KRE 504(c)(1) became effective July 1, 2006.

17

maintained that while Amber was not charged with trafficking, the evidence showed she could have been charged based upon the evidence recovered.

At the conclusion of that hearing, the trial court found that Amber gave voluntary consent to the motel room search, the officers acted lawfully and suppression of the evidence was unwarranted. The Commonwealth then asked for a specific finding that Amber was involved in and complicit in the activities for which Vick was charged. Kentucky Rule of Criminal Procedure (RCr) 8.14. The circuit court, finding the evidence uncontroverted, ruled accordingly. The circuit court entered a written order denying the suppression motion, finding "the motel room was occupied by the defendant and his wife, Amber Vick; Amber Vick voluntarily consented to the search of her motel room, . . . [and] Amber Vick acted jointly with the defendant in the trafficking of controlled substances in said motel."

Vick describes Detective Gibson's testimony at the evidentiary hearing as cursory and complains that the texts which Detective Gibson described as revealing her participation in the trafficking were not placed into evidence. However, as the Commonwealth points out, defense counsel had access to the contents of Amber's exchanges on Vick's phone and did not object to the trial court's finding or challenge the Commonwealth to introduce specific messages which would confirm Detective Gibson's testimony.[8] Being uncontroverted,

---

[8] The Commonwealth describes the extracted texts supporting Detective Gibson's testimony in its brief. A disc containing the extracted data was introduced as an exhibit during Detective Gibson's trial testimony.

Detective Gibson's testimony about the content of the texts and their support

for criminal charges against Amber supported the trial court's ruling.  The

weight of the evidence did not change when Vick introduced the fact that

Amber had not been charged as a codefendant.  Again, KRE 504(c)(1) provides

no spousal privilege is available "[i]n any criminal proceeding in which the

court determines that the spouses conspired or acted jointly in the commission

of the crime charged."  Based upon this plain language, the fact that Amber

had not been charged as a codefendant is of no consequence.  Moreover, given

the preponderance of the evidence on this spousal privilege issue, the trial

court's ruling was not arbitrary, unreasonable, unfair, or unsupported by

sound legal principles.  *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.

1999).

### III. Jurors' Cell Phone Possession During Deliberations Does Not Warrant Palpable Error Relief

Before the jury left the courtroom to begin deliberations, the trial court

instructed the jurors:

> You will be able to discuss the case among yourselves, but only
> discuss the case among yourselves.  I know many of us have smart
> phones and devices that allow us to access the internet.  Please do
> not do any independent research or try to gain any knowledge
> other than what you have heard here in the courtroom in reaching
> your decision.  You will have available to you the exhibits that were
> introduced into evidence.

With the record not indicating that the trial court collected the jurors' cell

phones, Vick seeks palpable error review of the trial court's decision allowing

the jurors to take their phones into the jury room.  He claims that amounted to

19

a violation of the RCr 9.70 admonition that the jurors are not "to speak to, or communicate with" anyone outside the jury.

Vick cites *Mason v. Commonwealth*, 463 S.W.2d 930 (Ky. 1971), for the premise that the reason for an RCr 9.70 admonition is to maintain the integrity of the jury process and to ensure that only the evidence presented in court against the defendant is considered by the jury. In *Mason*, the admonition required by RCr 9.70 was given to the jury but the officers in charge of the jury were not administered the oath required by RCr 9.68 at the noon recess on the first day of trial. *Id.* at 931. The Court addressed the trial judge's failure to administer the RCr 9.68 oath to the officers in charge of the jury, a preserved error, concluding a new trial was not warranted:

> It is not suggested by the appellant that any improper communication between any person and any juror did occur. . . . When it manifestly appears, as it does here, that the integrity of the jury has been preserved and that there has been no unauthorized communication by any person with any juror, we fail to see how any substantial right of the appellant has been violated . . . .

*Id.* at 932.

Vick acknowledges that the record does not reflect that any of the jurors engaged in an improper communication in the approximately 17-minute guilt phase deliberation or the 11-minute penalty phase deliberation, but he claims it was clearly erroneous for the trial court to allow the jurors to take cell phones into the deliberation room, an action inviting abuse by the jurors. He relies on this Court's statement in *Winstead v. Commonwealth*, 327 S.W.3d 386, 401 (Ky. 2010), that "when the jury retires to consider its verdict, the trial

20

judge must direct a court official to collect and store all cell phones or other electronic communication devices until deliberations are complete."

In *Winstead,* when it was brought to the trial court's attention that some jurors actually had been using their cell phones during deliberations, actions not admonished against, the trial court questioned the jury as a group and the jurors reported using phones only for personal matters. This Court agreed with Winstead's argument that the jurors' use of cell phones could easily result in opportunities for improper outside influence and provided guidance to the trial court about admonishing the jury throughout trial about proper use of their electronic devices. Because the trial court had otherwise appropriately admonished the jurors not to discuss the case with others who were not jurors and finding no evidence that the jurors had failed to follow that admonishment, the *Winstead* Court concluded the trial court did not abuse its discretion in denying the motion for a mistrial. *Id.*

Under RCr 10.26, if an error is palpable, affects the substantial rights of a party, and resulted in manifest injustice, this Court may grant appropriate relief. *Martin v. Commonwealth,* 409 S.W.3d 340, 344 (Ky. 2013). "Manifest injustice is found if the error seriously affected the "fairness, integrity, or public reputation of the proceeding." *Jones v. Commonwealth,* 382 S.W.3d 22, 29 (Ky. 2011) (citation and internal quotes omitted). Although Vick seeks relief from an alleged unpreserved error, relief is not available for the same reasons expressed in *Mason* and *Winstead.* Without some basis for believing improper

21

communications occurred between a juror and a non-juror, we cannot find the error affected Vick's substantial rights or resulted in manifest injustice.

## CONCLUSION

For the foregoing reasons, the Muhlenberg Circuit Court's judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General